## COLEMAN v. UNITED STATES.

### In re WILOIL CORPORATION.

No. 43609.

Court of Claims.

March 3, 1941.

Meredith M. Daubin, of Washington, D. C. (Homer L. McCormick, of Washington, D. C., on the brief), for plaintiff.

J. W. Hussey, of Washington, D. C., and Samuel O. Clark, Jr., Asst. Atty. Gen. (Robert N. Anderson and Fred K. Dyar, both of Washington, D. C., on the brief), for defendant.

Before WHALEY, Chief Justice, and GREEN, LITTLETON, WHITAKER, and JONES, Judges.

GREEN, Judge.

The plaintiff in this case is the trustee·of the Wiloil Corporation, a bankrupt, which is referred to in the opinion as the "corporation". He seeks to obtain a refund of taxes assessed and paid under section 617 of the act of 1932 which, after making provision for the imposition of a tax on gasoline sold by the importer thereof or by a producer of gasoline, provided in part as follows: "(c) * * * (2) the term 'gasoline' means gasoline, benzol, and any other liquid the chief use of which is as a fuel for the propulsion of motor vehicles, motor boats, or aeroplanes."

The report of our commissioner states that the Commissioner of Internal Revenue assessed an excise tax of $2,813.32 on a sale by the corporation to the New York Central Railroad Company of what is specifically designated as casing-head or natural gasoline under the provisions of section 617 of the revenue act of 1932, which tax was paid by the corporation on April 12, 1937, together with interest in the sum of $684.88. A timely claim for refund was filed, and rejected by the Commissioner of Internal Revenue. Thereupon the corporation instituted this suit on the ground stated in the claim that "casing-head gasoline (or 'snow-melting oil') was not a taxable 'gasoline' during the period in question". The evidence shows that the natural gasoline was sold for the specified use by the railroad company for melting snow and ice from its railroad switches and frogs and that it was not suitable for use alone as a motor fuel, its chief use being as a blending agent with heavier and less volatile gasolines for motor fuel purposes. The case turns on the question of whether the liquid so sold was subject to the tax and this depends on the construction of the statute.

We find nothing in the evidence which shows definitely the amount of the tax assessed and interest paid by the corporation. The plaintiff in argument, however, concurs in the finding made by the commissioner of this court with respect to the amount so paid and counsel for defendant ask that it be adopted. We therefore conclude that the parties are in agreement that the correct amount is stated in the report of our commissioner and have so fixed it in our findings.

A controversy arises in the case over the meaning of that portion of the statute which is quoted above and involves the proper construction thereof. The plaintiff in argument contends that the liquids taxed under the provision quoted above must be those "the chief use of which is as a fuel for the propulsion of motor vehicles, motor boats, or aeroplanes." The defendant, on the other hand, argues that such a construction implies a comma after the word "liquid" in the statute, and that as no such comma is found the chief use test contended for by plaintiff is not warranted. It is specially contended on behalf of the defendant that the word "gasoline" as used in the statute includes casing-head or natural gasoline the sale of which was made subject to the tax by the Commissioner.

For several distinct reasons we think the construction placed upon the statute by defendant is incorrect:

■ In determining the intent of Congress the language used must first be considered. Statutory words are uniformly presumed, unless the contrary appears, to be used in their ordinary and usual sense and with the meaning commonly attributed to them. See Caminetti v. United States, 242 U.S. 470, 37 S.Ct. 192, 61 L.Ed. 442, L.R.A.1917F, 502, Ann.Cas.1917B, 1168. The dictionary definition of gasoline is "a volatile, inflammable hydrocarbon mixture used as a fuel, especially for internal-combustion engines." Some other uses are mentioned in the dictionary, but we think it is quite clear that this definition does not include casing-head or natural gasoline which could not be used as a fuel for internal-combustion engines. Besides this, we think the court can take judicial notice that the term "gasoline" was universally understood throughout this country to mean a liquid the chief use of which was as a fuel for the propulsion of motor vehicles, motor boats, or airplanes. It referred to a commodity which was sold by that name on every highway and at numerous stations in every town and city throughout the country. We do not think any court would hold that if a purchaser ordered a quantity of gasoline the seller could fill that order by supplying casing-head or natural gasoline, which could not be used for the same purposes as gasoline. In fact, we think the meaning of the order would be so plain that no seller would attempt to do anything of that kind. It should be specially noted in this connection that casing-head or natural gasoline and gasoline, as shown by the findings, are different compounds in that each contains a substance not found in the other and each is lacking in a substance which the other contains. The uses of each are different from those of the other and there are other differences in their properties as shown by the findings. The term "gasoline" as ordinarily understood would not include casing-head or natural gasoline, which in its usual sense would have a quite different meaning. Evidently this was the meaning ascribed to the term "gasoline" by the Federal Commissioner who first passed upon it and, if correct, this is sufficient by itself and alone to prevent the application of the tax to "casing-head or natural gasoline."

■ A separate dispute is as to whether the words "any other liquid the chief use of which is as a fuel for the propulsion of motor vehicles, motor boats, or aeroplanes" are used as descriptive of the liquids to which the statute applies. As above stated, it is argued that the construction contended for by plaintiff would require, for correct punctuation, a comma after the word "liquid." We do not think this follows, or if it did, that the circumstance would be conclusive against the plaintiff. A common use of the word "other" is as meaning one of two or more of a class. If the construction contended for by defendant had been intended by Congress, we think this part of the statute would have read "and any liquid the chief use of which is as a fuel," etc., leaving out the word "other" which connects the fuels described in the last class with the two first mentioned. Punctuation is seldom conclusive and is often disregarded entirely in order to fix the true meaning. In the case of Hammock v. Loan & Trust Co., 105 U.S. 77, 84, 26 L.Ed. 1111, it was said: "Punctuation is no part of the statute." We think the clause which we are now construing would be generally understood to be so connected with the term "gasoline" as to be descriptive of a class to which the tax applied, and if the argument of defendant fails in this respect the defense fails entirely.

What we have said above is sufficient to dispose of the case but there is another matter which it is important to consider although it is not in itself and alone controlling.

■ We think the rule is well established that where several acts of Congress are passed relating to the same subject matter, subsequent legislation may be considered to assist in the interpretation of the prior legislation. Tiger v. Western Investment Co., 221 U.S. 286, 306, 31 S.Ct. 578, 55 L.Ed. 738. The reasons for this rule are manifest. Both the House and Senate Committees which present legislation to Congress for adoption are provided with assistants from outside who are not only of proved legal ability but by long experience become experts in the matter of drafting legislation. These assistants are called legislative counsel. As to the policy of the laws, they are under the control of the committee with which they are working, and in drafting statutes their work is merely to put in proper form the intentions of

the lawmakers. As a rule these assistants also prepare the committee reports on complicated or technical legislation in accordance with general instructions from the committee. A consideration of their work when revising a prior statute furnishes, we think, a valuable aid in interpreting the prior act.

■ The Commissioner of Internal Revenue who first made a ruling construing the act of 1932 under which the tax in controversy was imposed held that natural or casing-head gasoline was not subject to the tax, but subsequently another Commissioner held that sales thereof were taxable regardless of classification or use. When the 1934 act was adopted, section 603 thereof, 26 U.S.C.A. Int.Rev.Code § 3412(c) (2), after making provision for the imposition of a tax on gasoline sold by the importer thereof or by a producer of gasoline, changed the definition of gasoline as contained in section 617 of the 1932 act (as quoted above) and made a new statutory definition as follows: "(c) * * * (2) The term gasoline means (A) all products commonly or commercially known or sold as gasoline (including casinghead and natural gasoline), benzol, benzene, or naphtha, regardless of their classifications or uses; and (B) any other liquid of a kind prepared, advertised, offered for sale or sold for use as, or used as, a fuel for the propulsion of motor vehicles, motor boats, or airplanes; except that it does not include any of the foregoing (other than products commonly or commercially known or sold as gasoline) sold for use otherwise than as a fuel for the propulsion of motor vehicles, motor boats, or airplanes, and otherwise than in the manufacture or production of such fuel, and does not include kerosene, gas oil, or fuel oil." It will be noted that this provision of the statute specifically includes casing-head and natural gasoline.

The House Report on the Bill expressly stated: "The definition of 'gasoline' is changed by eliminating the test of whether the ·commodity is chiefly used as fuel for motor vehicles, motor boats, or airplanes, and making the term inclusive of all commodities sold or used for that purpose. Lack of proof of quantities used for differ-

ent purposes has made the 'chief use' test impossible of satisfactory administration."[1]

The conference report of the House of Representatives on the Bill as agreed to also stated: "(5) The definition of gasoline was broadened to include all naphtha and to include all liquids prepared, advertised, offered for sale, or sold for use as, or used as, fuel for the propulsion of motor vehicles, motor boats, or airplanes, *regardless of the chief use.*" [Italics inserted.] [2]

It appears very plainly that when Congress had this matter before it in 1934 it considered that the act of 1932 applied only to liquids "the chief use of which is as a fuel for the propulsion of motor vehicles, motor boats, or aeroplanes," and that this definition was not broad enough for the reason as stated in the report that the "chief use" test was impossible of satisfactory administration. Congress therefore amended the act so as to make the term "gasoline" specifically include casing-head and natural gasoline. A better example of how the prior act was understood can hardly be found. The 1934 act and the reports of Congress on the Bill showed plainly that Congress did not think that when the words of the 1932 act were considered in their ordinary and usual sense, casing-head or natural gasoline was taxable. We think this action of Congress tends to show not only how Congress understood the 1932 act but how it would be understood by the public generally, and in this way aids in determining the true meaning of its language.  •

■ Even if some question should still remain after what has been said above with reference to the construction of the statute, we think it must be conceded at the very least that the statute is ambiguous and of doubtful meaning, in which event the doubt must be resolved in favor of the taxpayer.

It follows that the plaintiff is entitled to recover the amount of tax paid on natural gasoline as shown by the findings, with interest as provided by law. Judgment will be entered accordingly.

WHALEY, Chief Justice, and WHITAKER, and LITTLETON, Judges, concur.

---

[1] See House of Representatives Report No. 704, Seventy-third Congress, Second Session. Published in Internal Revenue Cumulative Bulletin 1939–1, Part 2, page 568.

[2] See Conference Report to House of Representatives No. 1385, Seventy-third Congress, Second Session. Published in Internal Revenue Cumulative Bulletin 1939–1, Part 2, page 639.

JONES, Judge (dissenting).

I am unable to agree with the court's disposition of this case.

The applicable parts of section 617 of the Revenue Act of 1932 (47 Stat. 169, 266) are as follows:

"Tax on Gasoline

"(a) There is hereby imposed on gasoline sold by the importer thereof or by a producer of gasoline, a tax of 1 cent a gallon. * * *

"(c) As used in this section—

"(1) the term 'producer' includes a refiner, compounder, or blender, and a dealer selling gasoline exclusively to producers of gasoline, as well as a producer.

"(2) the term 'gasoline' means gasoline, benzol, and any other liquid the chief use of which is as a fuel for the propulsion of motor vehicles, motor boats, or aeroplanes."

It seems clear from the language used that Congress meant to impose a tax on the sale by the producer or importer of all gasoline plus all benzol plus any other liquid the chief use of which is as a motor fuel.

The chief use test applies only to other liquids. Its effect was to include other natural or synthetic products generally used as a motor fuel and to exclude other liquids not commonly used for motor propulsion.

Any other construction runs into difficulties. For example, the chief use of benzol is as an industrial solvent rather than as a motor fuel. It is used much less than is natural or casinghead gasoline in blending as a motor fuel. If the chief use test applies to gasoline it must apply to benzol. It seems improbable that Congress would name a specific commodity like benzol to be taxed and in the same sentence eliminate it by the chief use test.

If the construction claimed by plaintiff is correct the definition need not have specified any article, but might simply have said "Gasoline means any fluid the chief use of which is as a motor fuel."

The changes in the 1934 act are cited. Changes or comments by a later Congress would be persuasive if the language used by a previous Congress were not clear. The language of the early act seems clear. Congress, in order to raise revenue, found it necessary to search for things to tax. It named two articles, and then added a clause to cover other articles. This seems the natural conclusion.

But even if the later changes are considered, Congress simply broadened the definition and made it more inclusive. In addition to specifically naming gasoline and benzol, it also specifically named benzine and naphtha. Then in the second subdivision of the same sentence it included other articles offered for sale or sold as a fuel for the propulsion of motor vehicles. The House report in explaining the elimination of the special use test used the following language: "Lack of proof of quantities used for different purposes has made the 'chief use' test impossible of satisfactory administration."

In other words, the changes seem to be made primarily to increase the number of articles taxed and enlarge the field of operation. The term "chief use" was deleted not for the purpose of explaining or clarifying language, but for the purpose of eliminating administrative difficulties.

However, if the chief use test as used in the act of 1932 were construed to apply to the term gasoline, it is doubtful if plaintiff should be permitted to recover the tax. The evidence shows that by far the greater portion, probably more than 90%, of natural or casinghead gasoline is used as a motor fuel by blending with heavier gasoline. It was so used in 1932, and prior thereto. It is called gasoline. It is gasoline, and its chief use is the blending with heavier gasoline for the purpose of making fuel for the propelling of motor vehicles.

Even if the "chief use" should be held to apply the decision should turn not upon the purpose for which the special gasoline in this particular case was sold, but upon the chief use made of the article generally.