**WISHON et al. v. ANGLIM, Collector of Internal Revenue (two cases).**
**Nos. 21724, 21725.**

District Court, N. D. California, S. D.
Dec. 20, 1941.

Earl & Hall & Gerdes, of San Francisco, Cal., for plaintiffs.

Frank J. Hennessy, U. S. Atty., and Esther B. Phillips, Asst. U. S. Atty., both of San Francisco, Cal., for defendant.

ST. SURE, District Judge.

Plaintiffs seek to recover federal inheritance taxes claimed to have been erroneously collected by defendant. In the first case, the executor of the estate of Henrietta E. Wishon, who died August 4, 1935, claims a refund of $9,699.05; in the second, the executor of the estate of Albert Graves Wishon, who died on June 17, 1936, claims a refund of $17,705.59.

The cases were tried together to the court, a jury having been waived. Motions to strike out certain portions of the evidence relating to matters occurring subsequent to the death of both Mr. and Mrs. Wishon, ruling upon which was reserved, are denied.

The facts are undisputed. Wishon-Watson Company is a California corporation. It was organized May 2, 1923, with an authorized capital stock of $100,000, divided into 1,000 shares of the par value of $100 per share. From the time of incorporation of the company until the 4th day of August, 1935, Albert Graves Wishon, Henrietta E. Wishon, A. Emory Wishon, their son, and Jenny Wishon Watson, their daughter, each owned 250 shares of the capital stock. On August 4, 1935, Henrietta E. Wishon died testate, bequeathing the income from the 250 shares owned by her to Albert Graves Wishon for life and upon his death one-half of these shares to A. Emory Wishon and one-half to Jenny Wishon Watson. Albert Graves Wishon died June 17, 1936. At the

time of the latter's death, none of the estate of Henrietta E. Wishon had been distributed. Except as aforesaid, there never were any transfers of shares of Wishon-Watson Company. Accordingly, at the date of death of Henrietta E. Wishon, the outstanding shares were owned as follows:

| | |
|---|---|
| Henrietta E. Wishon | 250 shares |
| Albert Graves Wishon | 250 shares |
| A. Emory Wishon | 250 shares |
| Jenny Wishon Watson | 250 shares, |

and at the date of death of Albert Graves Wishon, the shares were owned as follows:

| | |
|---|---|
| Albert Graves Wishon | 250 shares |
| A. Emory Wishon | 375 shares |
| Jenny Wishon Watson | 375 shares, |

whereof 125 of A. Emory Wishon's shares and a like number of Jenny Wishon Watson's shares were subject to administration in the estate of Henrietta E. Wishon.

During all the period between the date of incorporation and the death of Albert Graves Wishon, the assets of the Company consisted of cash, stocks, bonds and other securities, improved and unimproved lands in the San Joaquin Valley, and farm equipment. From December 31, 1925, to December 31, 1935, the change in the non-operating land account consisted in a decrease of the investment from about $162,400 to about $154,000; there was no change at all in the investment in operating ranches, and even with respect to gross investment in ranch buildings and equipment the change during the period was merely from about $171,300 to about $174,500, or an increase of only about $3,200. It is true that in this ten-year period, the investment in stocks and bonds increased from about $400,000 to about $651,000, but it is quite obvious from an examination of the Company's financial statements in evidence that this increase was the result not of trading in securities but of the investment of earned surplus. For example, of stocks of a book value of $659,350 held December 31, 1930, all except stocks of the book value of about $25,000 were still held five years later, either in the original form or in the form into which they had been converted by corporate reorganization.

From the inception of the Company to the date of Mr. Wishon's death, substantially all its earnings were derived from dividends and interest received on stocks, bonds and other securities, from profit or loss on the occasional sale or redemption of securities, from the proceeds of the sale of farm products produced on farms owned and farmed by it and from rentals received from farm lands owned by it and leased to others.

The farming operations of the Company have been far from successful. During the period 1925 to 1935, inclusive, there were only two years (1933 and 1934) in which a net profit was shown, and the net result for the period was a loss of $127,325, or at the average rate of $11,575 per year. Nor could the non-operative lands of the Company have been profitable, for during the whole of the eleven-year period, the gross rentals received on an average investment of about $158,000 was $4,320, or an average of but $393 per year.

Income from dividends and interest, however, was sufficient, so that, after absorption of losses on farm operations and after payment of general administrative expenses, the Company operated at a profit throughout the period referred to above in every year but one.

Plaintiffs assert that on the date of death of Mrs. Wishon the per share value of her 250 shares of stock did not exceed $540, and that on the date of the death of Mr. Wishon the per share value of his 250 shares did not exceed $640. The defendant stands on the values upon which taxes were assessed by the Commissioner of Internal Revenue, viz., 838.36 per share for Mrs. Wishon's shares, and $1,023.95 per share for Mr. Wishon's shares. Briefly, the question for decision is as to the value of each 250 shares of stock at the time of the death of the owner.

The United States Treasury regulations applicable here provide: "The value of every item of property includible in the gross estate is the fair market value thereof at the time of decedent's death. * * * The fair market value is the price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or sell. * * * If the value of a security cannot be determined by sales, or from bid and asked prices, * * * then * * * the value is to be arrived at by giving consideration * * * in the case of shares of stock, upon the basis of the company's net worth, earning power, dividend-paying capacity, and all other relevant factors having a bearing upon the value of the stock." Regulations 80, Article 10.

During a period of ten years farming operations of the company show an average loss of $11,575 per year or a total loss of

$127,325 for these years. Rental received from the non-operative lands during the same period amounted to $393 per year, a total of $4,320. Defendant says in his brief: "For a ten-year period the company consistently held securities which averaged almost six percent on the investment. But this is not a company engaged in the business of holding stocks and bonds. It was also engaged in the business of farming, and of holding a large acreage of non-operated lands, presumably for speculation. The lands for a ten-year period (1931–1940) almost broke even." There is no support in the evidence for the statement that the non-operative lands were "held presumably for speculation."

The Wishon-Watson Company is a close family corporation. Its stock was not listed on the stock exchange, and there were neither willing buyers nor sellers. Such stock is "hard to sell and is not readily marketable." Wood v. United States, Ct.Cl., 29 F. Supp. 853, 859, citing Cartier v. Commissioner, 6 Cir., 37 F.2d 894, and Dohrmann v. Commissioner, 19 B.T.A. 507. Plaintiffs offered the testimony of an expert stockbroker who gave his opinion that in the open market Mrs. Wishon's stock would be worth $300 per share and Mr. Wishon's worth $375 per share. Such testimony is not impressive for the reasons above mentioned.

■ "The fact, however, that there was no sufficient proof of market value, was not an insuperable obstacle to the making of a fair valuation. It was clearly proper to introduce evidence tending to show the intrinsic value of the shares." (And cases cited.) Virginia v. West Virginia, 238 U.S. 202, 213, 35 S.Ct. 795, 800, 59 L.Ed. 1272. "It is well settled that where there is no open market for stock, it is proper to consider all the circumstances connected with the corporation which has issued the stock in determining its fair market value." Hummel-Ross Fibre Corp. v. Commissioner, 4 Cir., 79 F.2d 474, 478.

■ Numerous decisions showing different methods of evaluation are collected in 103 A.L.R. commencing at page 955. There appears to be no fixed rule for ascertaining the value. It has been said that the "holder of such shares must usually be content with the guess of the Commissioner, because, when property is not sold on an open market where a number of buyers can establish its value, it will seldom be possible to contradict the first honest judgment formed." Patterson v. Commissioner, 2 Cir., 42 F.2d 148, 149. But the Commissioner's "guess" as to value is not controlling here because he ignored the rule of the Treasury Department above quoted and based his appraisal wholly upon "asset" or net value. It is stipulated that the asset value of Mrs. Wishon's stock at the date of her death was $838.55 per share. The Commissioner appraised it at $838.36, a difference of 19 cents. The stipulated asset value of Mr. Wishon's stock was $1023.95, and the Commissioner's appraisal was in the identical amount.

■ In determining the fair market value of the stock in the present cases the court must then consider "the company's net worth, earning power, dividend-paying capacity, and all other relevant factors having a bearing upon the value of the stock."

■ After considering all of the evidence, I am of opinion that a fair method of evaluation is the average earnings for the three years nearest death, namely the year of death, the year previous, and the year following, which method is approved by defendant. I shall use a six percent return, which I consider reasonable. Following this formula the figures for Mrs. Wishon's estate are as follows:

| | |
|---|---|
| Net profit for 1934 | $ 23,804.08 |
| Net profit for 1935 | 30,119.46 |
| Net profit for 1936 | 51,238.60 |
| Total net profit for the three years | $105,162.14 |

One-third of this amount is $35,054, the average earning for one year. A six percent return would give a value of $584.23 per share.

For Mr. Wishon's estate the figures would be as follows:

| | |
|---|---|
| Net profit for 1935 | $ 30,119.46 |
| Net profit for 1936 | 51,238.60 |
| Net profit for 1937 | 40,780.15 |
| Total net profit for the three years | $122,138.21 |

■ One-third of this amount is $40,712.73, the average earning for one year. A six percent return would give a value of $678.55 per share. The values per share found by me are slightly in excess of those claimed by plaintiffs, who are, of course,

362

bound by the allegations of their complaints. Plaintiffs may have judgments as prayed for.