**BLACKARD et al. v. JONES, Collector of Internal Revenue.**

**Civil Action No. 1219.**

District Court, W. D. Oklahoma.

June 28, 1944.

Ira J. Underwood, of Tulsa, Okl., for plaintiff.

Charles E. Dierker, U. S. Atty., of Oklahoma City, Okl., for defendant.

BROADDUS, District Judge.

The court finds:

1. The facts stipulated by the parties.

2. The estate tax upon the shares of stock held by Kate Chestnut on the day of her death, August 9, 1938, was fixed by the taxing authorities by dividing the gross assets of the Securities Company by the issued shares and multiplying the result by the number of shares of which Kate Chestnut died seized.[1]

3. The value of one share of stock of Chestnut Securities Company on

---

[1] Total net assets, $2,388,986.47, divided by 19,500 outstanding shares, equals $122.-51.

August 9, 1938, the date of the death of Kate Chestnut was $91.89 and the value of the 4,584 shares subject to an estate tax was $421,218.76.[2]

---

[2] The testimony of the witness Rubin reflects consideration of the net worth of the Securities Company, its earning capacity, dividends paid, and other relative factors effecting the value and has received careful consideration. However, the value affixed by the court more nearly reflects the fair market value, particularly is this true when any allowed deduction of more than 25% of the asset value enters the realm of pure speculation. The valuation fixed is 75% of the value of the net assets and upon such valuation, the stocks should produce 5% on the net asset value.

For the year 1938 and preceding years this was not an excessive earning upon the fixed valuation. The court may exercise its judgment in the light of the court's knowledge and give to expert testimony only its merited weight. Weicker v. Howbert, 10 Cir., 103 F.2d 105, 107, note 7; Wyoming Inv. Co. v. Commissioner, 10 Cir., 70 F.2d 191, 193; Emerald Oil Co. v. Commissioner, 10 Cir., 72 F.2d 681, 683; Phipps v. Commissioner, 10 Cir., 127 F.2d 214.

The Chestnut Securities Company was a holding company of the Chestnut family, with 19,500 shares outstanding of the par value of $100.00. Until the death of Kate Chestnut on August 9, 1938, the stock of the Company was all held by the Chestnut family, and under her will the stock of which she died seized by devise vested in stockholders of the company and members of the family.

The corporate powers of the Chestnut Company, a Delaware corporation, were extensive. The evidence establishes that it exercised only the power of investment in marketable securities, the management of such securities, and the distribution of the corporate earnings.

The value of its securities on August 9, 1938 was $2,383,986.47. No share of the stock of the Company had ever been sold nor had there been any bid and asked prices. The net worth of the shares of the Chestnut Company which Kate Chestnut died seized, must be determined upon the Company's net worth, earning power, dividend paying capacity, and all other relevant factors having a bearing upon the value of the stock. 26 C.F.R. 80; 10 C. Other relevant factors would include a consideration of comparable stocks for which there was an established market value, and which were listed on the stock exchange. There was no specific provision to that effect either in the statute or the regulations at the time of the death of Kate Chestnut. Subsequent legislation provided that where the stocks were not listed on an exchange, and there had been no sales thereof, that the value of the stocks or securities of companies engaged in the same or similar lines of business which are listed on the exchange, should be taken into consideration in addition to all other factors, Sec. 501 of the Revenue Act of 1943 amending Sec. 811 of Tit. 26, U.S.C.A. Int.Rev.Code; Estate of Webb v. Commissioner, C.C.H. Dec. 13, 1929. It was a recognition by Congress of an important factor to be considered in such cases. Even though subsequently enacted it is of assistance in interpretation of the prior statute. Tiger v. Western Investment Company, 221 U.S. 286, 31 S.Ct. 578, 55 L.Ed. 738; Great Northern Ry. Co. v. United States, 315 U.S. 262, 277, 62 S.Ct. 529, 86 L.Ed. 836; W. A. Sheaffer Pen Co. v. Lucas, 59 App.D.C. 323, 41 F.2d 117; Coleman v. United States, 37 F.Supp. 273, 276, 93 Ct.Cl. 127. If the meaning of a statute may be gathered from a subsequent statute relating to the same subject, it is a legislative construction of the first statute. United States v. Phez Co., 9 Cir., 28 F.2d 106. Without such a provision the factor was within the meaning of the regulation.

The stipulation of the parties classified the assets of the Chestnut Company and fixed the net assets value upon such classification as follows:

| | |
|---|---|
| U. S. Government bonds, Treasury notes and Mayo Hotel bonds.... | $ 807,244.43 |
| Marketable industrial stocks ..... | 1,073,223.75 |
| Producing oil royalties............ | 99,378.21 |
| Producing oil and gas leases...... | 14,814.96 |
| Notes receivable ................... | 335,781.36 |
| Accounts receivable................ | 19,028.42 |
| Cash in Banks .................... | 27,395.68 |
| Accrued interest ................. | 12,119.66 |
| Total value ..................... | $2,388,986.47 |

Its net earnings for the years 1930 to 1938 inclusive are to-wit:

| Year | | Net Earnings | Per Share |
|---|---|---|---|
| 1933 | | $ 96,418.91 | $ 4.94 |
| 1934 | | 92,610.65 | 4.75 |
| 1935 | | 86,226.66 | 4.42 |
| 1936 | | 101,941.91 | 5.23 |
| 1937 | | 105,141.06 | 5.39 |
| 1938 | | 90,938.38 | 4.66 |
| | Totals | $573,277.57 | $29.39 |
| | Average | $ 95,546.26 | $ 4.90 |

### Conclusions of Law

■ A. The burden was upon plaintiff taxpayers to prove that the determination of the tax by the Commissioner was invalid and further, to establish the basic facts from which a correct determination of the tax could be made.[3]

■ B. The determination of the value of the stock by dividing the total value of the gross assets of the Chestnut Securities Company by the number of outstanding shares and multiplying the result by the number of shares held by Kate Chestnut on the date of her death was arbitrary and fixed an excessive value on such shares. The method followed was in conflict with the then prevailing regulations of the Bu-

From the earnings and for the same period of time dividends were paid as follows:

| Year | Per Share | Total |
|---|---|---|
| 1933 | $ 1.00 | $ 19,500.00 |
| 1934 | — | — |
| 1935 | — | — |
| 1936 | 5.00 | 97,500.00 |
| 1937 | 6.00 | 117,000.00 |
| 1938 | 16.00 | 312,000.00 |
| Totals | $28.00 | $546,000.00 |
| Average | $ 4.67 | $ 91,000.00 |

The average dividend for such period is approximately 4% upon the value of the stock fixed by the Government.

As a general rule the market value of listed stock is less than the assets value of such stock. The stock of which Kate Chestnut died seized, would not be of equal value to the assets value of such shares. There was no established market value for such shares and the market therefor was probably limited to Tulsa, Oklahoma, and its surrounding trade territory. The members of the family owning the remaining stock controlled its affairs and could prevent liquidation of the Company. If the Chestnut family had agreed to liquidation of its assets, there would have been some cost and loss incident to liquidation.

The Government asserts that there was no evidence of the value of stock to companies engaged in the same or similar business, which are listed on exchanges, properly comparable to the Chestnut Company stock. There is evidence and a comparison of the market and assets value of stock of companies which were engaged in a similar line of business and the stock of which companies unquestionably must have been of greater market value than the stock of the Chestnut Company. The assets value and market value of such companies are shown by the following table:

| | Asset Value | Market N.Y.S.E. | % Difference |
|---|---|---|---|
| National Bond & Share | $25.32 | $21.75 | 14% |
| Lehman Corp. | 31.28 | 25.75 | 18% |
| Adams Express | 13.48 | 11.25 | 17% |
| American International Corp. | 9.28 | 7.12 | 23% |
| Selected Industries Inc. $5.50 Cumulative Prior ($25.00 par) Stock Callable at $110.00 | 89.52 | 67.00 | 25% |

From the difference in the market and assets value of the shares noted, it is reasonable to believe that the market value of the stock of the Chestnut Company on August 9, 1938 would be 25% less than the asset value. Other factors, such as the earning and dividend record of the Chestnut Company, force the conviction that the market value of the stock must have been on the day of the death of Kate Chestnut 25% less than its asset value. No satisfactory evidence has been introduced to establish a lesser value.

The nature of the securities owned by the Chestnut Company and the low earning capacity, account for the earnings and dividend record of the Company when compared with other companies in a similar line of business. While the managing officers of the Company were unknown, their investment record and the dividends earned and distributed, establish that such officers proceeded with caution and ability. The local or Tulsa market for the stock should have been good, and if the stock had been offered for sale, it would have been attractive to the members of the Chestnut family unless the members of the family, by concert of action, fixed a price less than its actual value.

[3] Burnet v. Houston, 283 U.S. 223, 228, 51 S.Ct. 413, 75 L.Ed. 991; United States v. Anderson, 269 U.S. 422, 433, 46 S.Ct. 131, 70 L.Ed. 347; Reinecke v. Spalding, 280 U.S. 227, 233, 50 S.Ct. 96, 74 L.Ed. 385; Forbes v. Hassett, Collector, 1 Cir., 124 F.2d 925.

reau of Internal Revenue as promulgated by the Secretary of the Treasurer.[4]

■ C. The value of the shares of stock in the Chestnut Securities Company of which Kate Chestnut died seized could not be determined by sales, or from bid and asked prices and must be determined upon the basis of the company's net worth, earning power, dividend paying capacity, and all other relevant factors having a bearing upon the value of the stock.[5]

### The Policies of Insurance

■ 4. Policy 9928,842 was issued by the Equitable Life Assurance Society of America on November 13, 1935, as a Single Premium Life policy for $40,000, consideration for which was $37,540, and annuity policy 9928,843, consideration for which was $4,860, was prepared in conjunction with it. The two policies were one and the same transaction and are considered as such, and the Equitable Life Assurance Society would not have entered into the life insurance contract unless the annuity contract, entered into on the same day, was a part of the transaction.

### Conclusion

■ D. The two policies created no insurance risk and the amount payable to the beneficiary named in the so-called life policy was not insurance within the scope of Sec. 302(g) of the Revenue Act of 1926, 44 Stat. 9, 70, as amended, 47 Stat. 169, 279, 48 Stat. 680, 752, 26 U.S.C.A. Int.Rev.Code, § 811(g), and the amount payable under the policy designated a life policy was taxable under Sec. 302(c) of the Revenue Act of 1926, as amended, it being a transfer to take effect in possession or enjoyment at or after death.[6]

---

[4] The value of the gross estate of the decedent shall be determined by including the value at the time of death of all property of the decedent to the extent of the interest of the decedent at the time of death. Opening paragraph of section 302(a) of the Revenue Act of 1926, as amended May 10, 1934, c. 277, sec. 404, 48 Stat. 754, 26 U.S.C.A. Int.Rev.Code, § 811.

The value of property includible in the gross estate is the fair market value at the time of decedent's death. Fair market value is the price at which the property would change hands between a willing buyer and a willing seller, neither being under compulsion to buy or sell. 26 C.F. R. 80:10(a). If the value of shares of stock can not be determined by sales, or from bid and asked prices as prescribed in the preceding provisions, then * * * the value is to be arrived at * * * upon the basis of the company's net worth, earning power, dividend paying capacity, and all other relevant factors having a bearing upon the value of the stock. 26 C.F.R. 80:10(c); Laird, et al., v. Commissioner, 3 Cir., 85 F.2d 598; Wishon v. Anglim, Collector, D.C.N.D.Cal., 42 F. Supp. 359; Worcester County Trust Co. et al. v. Commissioner, 1 Cir., 134 F.2d 578.

The value fixed by the Commissioner was based solely upon the net assets of the Securities Company. If liquidation and distribution of the company could have been had on the day of death, the expense of liquidation and sale of assets would have been considerable, presuming a ready market existed. Weber v. Rasquin, Collector, 2 Cir., 101 F.2d 62. The applicable regulation here is the one noted. The cases of United States v. Ryerson, 312 U. S. 260, 61 S.Ct. 479, 85 L.Ed. 408; Guggenheim v. Rasquin, 312 U.S. 254, 61 S. Ct. 507, 85 L.Ed. 813; Powers v. Commissioner, 312 U.S. 259, 61 S.Ct. 509, 85 L.Ed. 817, are not in point.

[5] 26 C.F.R. 80:10(c), Note b, supra. The government does not urge that the Chestnut Company was organized to avoid the payment of any tax or that its organization is not bona fide. It may not be doubted that the taxpayer may decrease the amount of his taxes by means which the law permits. Gregory v. Helvering, 293 U.S. 465, 470, 55 S.Ct. 266, 79 L.Ed. 596, 97 A.L.R. 1355; Jones v. Helvering, 63 App.D.C. 204, 71 F.2d 214; Helvering v. Johnson, 8 Cir., 104 F.2d 140, 143.

[6] Helvering v. Le Gierse, 312 U.S. 531. 61 S.Ct. 646, 85 L.Ed. 996; Keller's Estate v. Commissioner, 312 U.S. 543, 61 S Ct. 651, 85 L.Ed. 1032.