SKY HARBOR AIR SERVICE, A CO-PARTNERSHIP, ET AL., APPELLANTS, V. AIRPORT AUTHORITY OF THE CITY OF OMAHA, APPELLEE.

117 N. W. 2d 383

Filed October 19, 1962. No. 35178.

Shrout & Foley, for appellants.

Herbert M. Fitle, Bernard E. Vinardi, Irving B. Epstein, Frederick A. Brown, Edward M. Stein, Sebastian J. Todero, and Frederick S. Geihs, for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, SPENCER, BOSLAUGH, and BROWER, JJ.

BOSLAUGH, J.

This is a proceeding under the Declaratory Judgments Act for the construction and interpretation of a written lease. The plaintiffs are Sky Harbor Air Service, a partnership, and Robert E. O'Connor, its receiver. The defendant is the Airport Authority of the City of Omaha, Nebraska.

The defendant has the control and management of Eppley Airfield. Sky Harbor Air Service is engaged in a general aviation business at Eppley Airfield. It conducts a business described as a fixed base operation upon property leased from the defendant. As such it sells airplanes, parts, and gasoline; stores and repairs airplanes; teaches flying; runs a charter service; and does everything generally in the aviation business except manufacturing.

The lease in question was executed on March 9, 1956, by the city of Omaha as lessor and Sky Harbor Air Service as lessee. In 1959 the defendant succeeded to the rights and obligations of the city under the lease. On June 21, 1961, Robert E. O'Connor was appointed receiver for Sky Harbor Air Service which had been dissolved as of March 31, 1961, by a judgment of the district court for Douglas County, Nebraska.

The controversy between the parties concerns the liability for repairs to the buildings and ramps upon the leased property. The buildings involved are an office building and two hangar buildings. The ramps are the grounds adjacent to the buildings which have been surfaced with a thin asphalt coating. The repairs which became necessary were the result of the normal exposure of the property to the weather. The district court held that it was the duty of the lessor to replace or repair damage by the elements only where the action of the elements was sudden, unexpected, or unusual and that the plaintiffs were liable for the repairs in question. The plaintiffs' motion for new trial was overruled and they have appealed.

In the absence of an express covenant or stipulation a lessor is not bound to make repairs to leased property. Sipprell v. Merner Motors, 164 Neb. 447, 82 N. W. 2d 648. Thus, the question is whether the lessor assumed the duty that otherwise rested upon the lessee.

The lease in question contained the following provisions:

Article III, paragraph 1: "Lessee agrees, at its own expense, to cause the lands demised to be maintained in a presentable condition consistent with good business practice."

Article III, paragraph 8: "Lessee agrees, at its own expense, to cause to be kept and maintained all structures on the leased premises in good repair during the term hereof except as provided for in Article V, paragraph 8."

Article V, paragraph 8: "Lessor shall replace or repair any land, building or structure totally or partially damaged by fire, the elements, floods, tornadoes, or any other casualty of any kind whatsoever, or by any act of a public enemy, or by any act of God. In connection herewith, Lessor covenants to carry fire insurance and other necessary insurance. In the event that the lands demised, or any or all of the structures or buildings thereon, become untenantable for any reason, or in the event that the airport is rendered unusable to Lessee because of conditions thereof, for any reason, the Lessee shall not be liable for any rental during the period which said land, structure, or building is untenantable, or said airport is unusable."

The plaintiffs concede that paragraphs 1 and 8 of Article III place a general duty of maintenance and repair upon the lessee, but contend that paragraph 8 of Article V creates an exception with respect to any damage caused by the elements. The plaintiffs construe paragraph 8 of Article V to be a covenant by the lessor to assume the duty of maintenance and repair of all damage caused by the natural forces of nature, ordi-

nary as well as extraordinary. The effect of such a construction would be substantially to nullify the obligation of the lessee to keep and maintain all structures in good repair because most of the repairs that become necessary are the result of the action of the weather upon the property.

Unless otherwise qualified, paragraphs 1 and 8 of Article III place the duty of maintenance and repair of all damage, including that resulting from fire, acts of God, floods, tornadoes, and similar unusual occurrences, upon the lessee. We think that the purpose of the first sentence of paragraph 8 of Article V is to relieve the lessee from the burden of repairing the damage resulting from such unusual occurrences and not to excuse the lessee from the burden of repairs made necessary by the normal action of the weather upon the property. See 32 Am. Jur., Landlord and Tenant, § 795, p. 678.

The word "elements" is used with fire, floods, tornadoes, acts of a public enemy, and acts of God. The meaning of a doubtful word may be ascertained by reference to the meaning of the words associated with it. Behrens v. State, 140 Neb. 671, 1 N. W. 2d 289. General and specific words, capable of analogous meaning, when used together, take color from each other so that general words are restricted to a sense analogous to the less general. O'Gara Coal Co. v. Chicago, M. & St. P. Ry. Co., 114 Neb. 584, 208 N. W. 742. Thus, "elements" as used in paragraph 8 of Article V of the lease refers to a sudden, unexpected, or unusual action of the elements.

The plaintiffs produced evidence showing that before the defendant assumed control of Eppley Airfield, the lessor maintained and repaired the buildings and ramps at its expense. The plaintiffs contend that this evidence established a practical construction of the lease by the parties and that it is binding upon the defendant.

The interpretation or construction of an indefinite or ambiguous contract by the parties may be shown, but

a practical construction put upon a contract by the parties cannot control the express, unambiguous provisions of the instrument itself. James Poultry Co. v. City of Nebraska City, 135 Neb. 787, 284 N. W. 273. The lease in question in this case is not so indefinite or ambiguous that a practical construction by the parties is controlling.

The judgment of the district court is correct and it is affirmed.

AFFIRMED.