**UNITED STATES of America, Plaintiff,**

v.

**W. Hoyt LAMBERT and Eleanor C. Lambert, Defendants.**

**Civ. No. 03367.**

United States District Court, D. Nebraska.

May 21, 1973.

Randall A. Rinquest, Asst. U. S. Atty., and Louis M. Bruckner, Omaha, Neb., for plaintiff.

Robert W. Green, and Eleanor K. Swanson, Omaha, Neb., for defendants.

## MEMORANDUM

RICHARD E. ROBINSON, Senior District Judge.

This matter comes before the Court after trial to the Court without a jury. Briefs have been submitted, oral arguments have been heard, and the Court is now prepared to announce its findings of fact and conclusions of law in accordance with Rule 52 of the Federal Rules of Civil Procedure.

Jurisdiction exists under 28 U.S.C. § 1345.

Jury trial has been waived and the case is submitted pursuant to stipulation of the parties on the record of evidence in an earlier action, Lambert v. Small Business Administration, Civil No. 02800 [the earlier action was dismissed after trial for lack of subject matter jurisdiction].

On February 6th, 1963, the defendants, W. Hoyt and Eleanor C. Lambert, [landlords], leased property in Omaha, Nebraska to the Villones [not a party] to be equipped and operated by the Villones as a drive-in-restaurant. Paragraph 13 of the lease provides in part:

"It is further agreed that all the goods, chattels, fixtures and other personal property belonging to said Lessee, which are, or may be put into the said leased premises during said term, whether exempt or not from sale under execution and attachment under the laws of the State of Nebraska, shall at all times be bound with a first lien in favor of said Lessor, and shall be chargeable for all rent hereunder and the fulfillment of the other covenants and agreements herein contained, which said lien may be enforced in like manner as a chattel mortgage, or in any other manner afforded by law."

[Paragraph 25 provides that the lessees are to pay all taxes]

On November 6th, 1963, operation of the restaurant commenced. Mr. Villone equipped and furnished the restaurant

almost entirely on credit, and then on January 15th, 1964, made an application for a loan to the Douglas County Bank [Bank]. On March 10th, 1964, the Villones executed a note for $54,000.00 to the Douglas County Bank of Omaha secured by a chattel mortgage of the same date which was filed with the Douglas County Register of Deeds on March 11, 1964 at 11:53 A.M.

Buller Fixture and Supply Company was the major supplier of furniture and equipment and received $40,044.03 from the loan proceeds. Buller Fixture and Supply Company had retained no security interest in any of the items sold on credit to the Villones.

The loan was made in participation with the Small Business Administration [SBA]. Both the SBA and the Bank had actual knowledge of the lease between the Landlord and the Villones, but the lease was never recorded.

During October, 1966, Villone missed his first rent payment to the Landlord, and on October 28th, 1966, the Bank assigned its note to the SBA. In late February or early March Villone ceased to operate and the business was leased to a new tenant on October 1st, 1967. On October 1st, 1967, the total rent claimed by the Landlord was $5,776.00; the total unpaid taxes claimed by the Landlord was $4,337.53; and other expenses claimed totaled $17,077.00.

In late February or early March a representative of the SBA met with the Landlord, and claimed the equipment and furniture pursuant to the chattel mortgage. Then the items were inventoried and affixed with tags which stated that the items were property of the United States Government.

Thereafter, in March, 1967, the Landlords changed the locks, removed the tags and refused the SBA access to the items. Negotiations between the SBA and the defendant Landlords for a sale or repossession of items by SBA failed and the United States has brought this action on the theory of conversion. The issue of liability initially turns on whether the Landlords or the SBA have a first lien.

■ Both parties have addressed the issue of whether the Landlords' lien achieved the quality of "choateness". This is a federal question.

United States v. Latrobe Construction Company, 246 F.2d 357, 365 [8th Cir. 1957] held in part that:

"The decisions of the Supreme Court heretofore discussed appear to establish quite definitely that a federal priority or federal lien will prevail over any lien that is not specific and perfected. The Supreme Court has uniformly held that, as against federal priorities or liens, the question of whether the lien asserted against the Government claim is specific and perfected is always a federal question."

The federal common law rule of "first in time", "first in right" is applicable in this case.

This rule is discussed in conjunction with the concept of "choate" in T. H. Rogers Lumber Co. v. Apel, 468 F.2d 14, 18 [10th Cir. 1972]:

"We turn now to the question as to what is meant by the federal 'first in time, first in right' rule. As previously noted, the non-federal lien must be choate at the crucial time in order to successfully compete with a federal lien. United States v. New Britain, 347 U.S. 81, 84, 74 S.Ct. 367, 98 L.Ed. 520 [1954]. This requirement can be met only if the claim is final; that is, not subject to a judicial contest as to its amount, and also only if it is enforceable by summary proceedings. Thus, a state statutory lien must be specific and perfected on the date that the federal lien was recorded. This determination must be made in accordance with federal law. And so, the state characterization of the lien is not conclusive as against the federal government. [Footnotes omitted]."

In United States v. Waddill Co., 323 U.S. 353, 65 S.Ct. 304, 89 L.Ed. 294 [1945] a landlord claimed a priority

over proceeds from a sale of personal property, fixtures, and equipment used in the conduct of restaurant business and located on the premises. There the lien was claimed pursuant to a state statute which had been held to be fixed, specific, and not merely inchoate by the State courts.

The Supreme Court reversed and characterized the landlord's lien as serving "merely as a *caveat* of a more perfect lien to come", and "[i]t gave the landlord only a general power over unspecified property rather than an actual interest in a definite portion or portions thereof."

■ The Court finds that the lien of the landlord was inchoate.

At the time the chattel mortgage of the SBA was filed and perfected the Landlord had neither filed his lease nor taken any steps, as disclosed in the record, to indicate that the claimed lien would be enforced; or if so to what items and for what amount. The chattels in question were not specified and the inventory could have been increased or decreased, and the amount of rent due would necessarily be fixed at some future date.

Although the tenant had apparently failed to pay taxes prior to the perfection of the SBA chattel mortgage the Landlord had taken no steps to reduce that amount to a certainty or enforce the clause in the lease in any manner with respect to the taxes. The claimed Landlord's lien was neither specific nor perfected, and thus must be held to be subordinate to the position of the SBA.

The SBA's chattel mortgage was filed, specifically described and listed the furniture and equipment involved, and was given to secure a promissory note of a specific amount and date.

■ The Court further finds that the SBA had a right to possession of the chattels covered by its mortgage and was wrongfully deprived of that possession for an indefinite time such that there was a conversion by the defendants.

■ However, there is an issue as to whether certain equipment should be characterized as "chattels" or "fixtures". If properly considered as fixtures then these items became part of the realty and rightfully belong to the Landlords and would not be a subject of the SBA's chattel mortgage.

Both parties cite Banker's Life Ins. Co. v. Ohrt, 131 Neb. 858, 270 N.W. 497 [1936] which provides in part:

" 'Ordinarily the requisites of a fixture are: (1) Actual annexation to the realty, or something appurtenant thereto; (2) appropriation to the use or purpose of that part of the realty with which it is connected; (3) the intention of the one making the annexation to make the article a permanent accession to the freehold,—this intention being gathered from the nature of the articles affixed, the relation and situation of the person making the same, the structure and mode of annexation, and the purpose or use for which it has been made. Freeman v. Lynch, 8 Neb. 192, followed.' Oliver v. Lansing, 59 Neb. 219, 80 N.W. 829."

■ However, Rothery v. Dohrse, 122 Neb. 259, 240 N.W. 296 [1932] is more on point because it involved "trade fixtures". A "trade fixture" unlike a "fixture" is not considered part of the realty. *Rothery, supra,* held that a boiler used for heating and furnishing steam in a cleaning plant was a "trade fixture" and cited the following language from Frost v. Schinkel, 121 Neb. 784, 238 N. W. 659 [1939] as controlling:

"Trade fixtures may be defined as articles annexed to the realty by a tenant for the purpose of carrying on a trade or business, not exclusively agricultural, and are ordinarily removable by him while he is in possession of the freehold, and that such trade fixtures must be taken to pieces or even wrecked to remove them from the premises does not affect the tenant's right of removal, but such removal

must never cause substantial damage to the freehold."

Accord Bee Bldg. Co. v. Daniel, 57 F.2d 59 [8th Cir. 1932].

The lease in this case explicitly provides that the Lessee is to furnish and install "trade fixtures" required for operation of a drive-in. While repairs would be necessary to the building upon the removal of the cooler and exhaust fans this Court cannot conclude that this would cause substantial damage to the freehold. The SBA, must as the Lessee would, bear the cost of restoration caused by a removal. The undisputed testimony places this cost at $950.00.

The measure of damages is the value of the property at the time and place of conversion. State Securities Co. v. Svoboda, 172 Neb. 526, 110 N.W. 2d 109 [1961].

The Court finds that the value of the chattels [exclusive of repair costs] in question at the time and place of conversion was $9008.80. The resale value was stated to be 20% of the total original value [$45,044.00]. Although a higher sum was bid the SBA voluntarily returned this check as a unilateral action on its part. The SBA is the plaintiff and has the burden of proof and has not shown that the actions of the defendants would have prevented such a sale. No notice of this offer was communicated to the defendants prior to returning the check and thus it cannot be established by a preponderance of the evidence that the defendant's actions caused the SBA to return the check.

The Court further finds that interest should not be allowed from the date of conversion because the defendants acted in good faith upon the advice of counsel, a reasonable controversy existed and the amount in dispute was not certain. See Lundt v. Parsons Construction Co., 181 Neb. 609, 150 N.W.2d 108.

Since the SBA would be obligated to repair the building if the fans and coolers were to be removed the value of the chattels would be reduced accordingly. Thus the amount which would have been realized from the sale of these chattels would be $9008.80 minus $950.00 or a net figure of $8,058.80.

A Judgment for the Plaintiff, United States of America will be entered.

The foregoing shall constitute this Court's findings of fact and conclusions of law pursuant to Rule 52 of the Rules of Civil Procedure.