BISHOP BUFFETS, INC., APPELLANT AND CROSS-APPELLEE, v. WESTROADS, INC., APPELLEE AND CROSS-APPELLANT.

274 N. W. 2d 530

Filed January 24, 1979. No. 41685.

Leo Eisenstatt and J. Patrick Green of Eisenstatt, Higgins, Kinnamon, Okun & Stern, P.C., for appellant.

John K. Boyer and Denzel R. Busick of Fraser, Stryker, Veach, Vaughn, Meusey, Olson & Boyer, P.C., for appellee.

Heard before SPENCER, C. J., PRO TEM., BOSLAUGH, McCOWN, CLINTON, BRODKEY, and WHITE, JJ., and KUNS, Retired District Judge.

WHITE, J.

Plaintiff below and appellant in this court, Bishop Buffets, Inc., filed suit against Westroads, Inc., in the form of a declaratory judgment action to construe four separate clauses of the lease between

appellee Westroads, Inc., as lessor and Bishop Buffets, Inc., as lessee of a building and grounds for the operation of a cafeteria at the Westroads Shopping Center in Omaha, Douglas County, Nebraska. During trial, the parties reached a settlement on the construction of one of the paragraphs of the lease. As to the other three provisions in the lease, the trial court found generally in favor of the appellant on paragraph Eighth of the lease and in favor of the appellee in its construction of paragraph Twenty-ninth (A) and Twenty-ninth (B) of the lease. Plaintiff appeals and defendant cross-appeals. It should first be noted that where no factual issues are involved, no special deference is owed to the trial court and we are free to determine as a matter of law the meaning of a contractual provision. See Don J. McMurray Co. v. Wiesman, 199 Neb. 494, 260 N. W. 2d 196. We shall deal with the provisions of the lease individually.

The first provision in controversy is the following part of paragraph Eighth. "Landlord shall operate and maintain common areas and common facilities of the shopping center. Tenant shall pay upon demand in addition to the rent a proportionate share of costs of *operating and maintaining* common areas and common facilities. Common areas and common facilities include without limitation all parking areas, access roads, sidewalks, malls, restrooms, landscaped space and any other space used in common or available for use by the Tenant, the Tenant's customers, employees, agents, servants or other invitees of the Tenant." (Emphasis supplied.)

The question is whether the real estate taxes which are attributable to the shopping center's common areas are, within the meaning of paragraph Eighth, costs of "operating and maintaining" the common areas. Westroads contends that they are: Bishop contends that they are not.

The trial court resolved the issue in favor of

Bishop, noting that the lease provides in paragraph Twenty-ninth that: "All special assessments and all regular consolidated real estate taxes * * * are to be paid by the Owner with the following exceptions: * * *." The import of the exceptions (A) and (B) listed thereunder are also in dispute and will be considered later in this opinion. Sufficient for the purpose of this discussion is that they do not refer to taxes attributable to the common area. The meaning of paragraph Twenty-ninth is obvious, and as obvious as plain language can make it, that it is the obligation of the owner to pay taxes except as specified in that paragraph. In the words of the trial court: "It seems clear, therefore, that no special assessments nor regular consolidated real estate taxes are to be included, or ought to have been included, in the computation of common area expenses to be paid by Bishops." Counsel for the appellee and cross-appellant introduced the testimony of accountants and cited numerous cases concerning the definition of "operating expenses" and counsel for appellant and cross-appellee cited cases arriving at a different definition, each in support of their proposition that taxes are or are not included within the ordinary definition of the term. It is unnecessary for us to pass on that phrase since by the clear, open, and plain meaning of paragraph Eighth when read with paragraph Twenty-ninth, it was the intention of the parties to limit the obligation of the tenant to pay that proportionate share of taxes that is specified in the exceptions of paragraph Twenty-ninth. In the construction of the terms of an agreement, effect must be given, if possible, to all portions of the contract in order to determine and effectuate the intention of the parties. See, section 76-205, R. R. S. 1943; Westbrook v. Masonic Manor, 185 Neb. 660, 178 N. W. 2d 280.

During trial, Westroads demonstrated that Bishop had, for some time after its tenancy had begun, paid

bills for its share of common-area expenses under paragraph Eighth. The bills included an item for real estate taxes on the common area. Westroads argues that the parties thereby placed a practical construction on paragraph Eighth similar to that which they argue for here, and that this practical construction is controlling. Authority is cited for the proposition that where the parties have adopted a particular construction by their performance, that construction will generally be adopted by the courts. However, a review of that authority indicates that the rule is one to aid in the determination of the intent of the parties where that intent is not otherwise clearly expressed in the document. As discussed above, no such ambiguity exists here. The practical construction put upon a lease contract cannot control the express, unambiguous provisions of the instrument itself. See Sky Harbor Air Service v. Airport Authority, 174 Neb. 243, 117 N. W. 2d 383. See, also James Poultry Co. v. City of Nebraska City, 135 Neb. 787, 284 N. W. 273.

The trial court was correct in its construction of paragraph Eighth.

Paragraph Twenty-ninth of the lease, set out above, provides that the landlord shall pay all real estate taxes with two exceptions set out in paragraphs Twenty-ninth (A) and Twenty-ninth (B). It is the meaning and scope of those exceptions which are in dispute and which are considered in the remainder of this opinion.

Paragraph Twenty-ninth (A) provides that: "Increases over and above the regular consolidated real estate tax levied for the third year after opening due and payable the following year resulting from increased mill levy or from an increased assessed value by reason of a general reapportionment or any cause other than the expansion or enlargement of the shopping center shall be charged to the Tenant on a pro-rata basis of floor area demised herewith as

against the total rentable area in the building. Said additional taxes, if any, shall be paid to the Owner not later than three (3) days prior to the delinquent date of such taxes."

The trial court held that Bishop should reimburse Westroads according to the proportionate formula for any increase in taxes unless it could show that the increase was due to expansion or enlargement. Bishop alleges that this assignment of the burden of proof constitutes error on the part of the trial court. We cannot agree. The burden of proof is ordinarily on the party who would suffer if no evidence at all were introduced. See, Kucaba v. Kucaba, 146 Neb. 116, 18 N. W. 2d 645; Fitzsimons v. Frey, 153 Neb. 124, 43 N. W. 2d 531.

In the general course of business, Westroads will receive its general assessment for taxes. Under paragraph Twenty-ninth (A), it will bill its tenant for a proportionate share of any increase in those taxes. Bishop may, of course, dispute that bill, and, if it can show that some portion of the increase is due to expansion or enlargement, avoid payment. The imposition of the burden of proof upon one party or the other is often a matter of common sense. Bishop contends that proof by Westroads that no portion of an increased assessment is attributable to expansion is a condition precedent to any obligation under Twenty-ninth (A). It is true that the Westroads Center was undergoing rapid expansion during the early years of this lease but acceptance of Bishop's condition precedent argument would, in effect, create a presumption that every increase in assessment, year after year, was due to expansion or enlargement. Such a presumption does not comport with reality.

While we thus agree with the trial court's allocation of the burden of proof on the issue of "expansion or enlargement," we cannot agree with its definition of those terms. Our disagreement is with the

determination that "expansion or enlargement" includes not only the creation of new floor space outside the original confines of the building, but also any substantial construction performed within those confines in order to make additional rental space available. This determination was not assigned as error by Westroads, but, as already mentioned, construction of the lease is a question of law which we are as free to answer as was the trial court. In addition, Supreme Court Rule of Practice 8 a 2 (3) permits the court to notice a plain error not assigned.

The exception within the exception of Twenty-ninth (A) is for expansion or enlargement *of the center*, not of rentable space. Enlarge means to make larger, to increase in capacity, dimensions, or extent. See De Angelis v. Laino, 252 N. Y. S. 871, 141 Misc. 518. A building is enlarged, extended, reconstructed, or structurally altered within prohibition of zoning resolutions relating to nonconforming uses only where there is a change or substitution in a substantial particular in the structure of the building itself or in one of its parts or by the addition of another structure to it so there is an effective conversion of an existing building into a different structure. See 440 East 102nd Corporation v. Murdock, 285 N. Y. 298, 34 N. E. 2d 329. We are not satisfied that the addition of interior walls without substantially altering or changing the structure is an enlargement or expansion within the meaning of this provision of the lease and the court was in error in so holding. It should be noted that under the trial court's construction, the tenant's obligations under paragraph Twenty-ninth (A) may be reduced not only by the decrease in its proportionate share of rentable space which the "expansion" necessarily engenders, but also by the additional cost of improvements to create additional rentable space under the trial court's construction of the term "expansion or enlargement." It is unlikely that the

parties intended this double reduction. Under our construction, Bishop receives only the first reduction.

Finally, we consider paragraph Twenty-ninth (B). "In the event that taxing authorities shall at any time during the term of this lease assess leasehold improvements, store fixtures, lighting fixtures, interior partitions, that heating, cooling or ventilating equipment located within the demised premises or other property of the Tenant against the real estate along with land and basic building, the taxes thus assessed shall be repaid by the Tenant to the Owner not later than three (3) days prior to the delinquent date thereof."

The question is whether the phrase "or other property of the Tenant" is merely one of a series of items on which the tenant must pay taxes or whether it is, as Bishop argues, a general phrase which describes the category to which specific items must conform. Stated differently, is paragraph Twenty-ninth (B) properly limited to property "of the tenant?" The trial court ruled in favor of the appellee. We disagree.

Our opinion is influenced more by the everyday, plain meaning of the words used than by judicial precedent, but the decision in Coleman v. United States, 37 F. Supp. 273, is sufficient to confirm that opinion. There, the question was whether a tax on "gasoline, benzol, and any other liquid the chief use of which is as a fuel for the propulsion of motor vehicles" would reach casing-head gasoline used to melt snow and ice. The Court of Claims held that it did not, noting that: "A common use of the word 'other' is as meaning one of two or more of a class. If the construction contended for by the defendant had been intended by Congress, we think this part of the statute would have read, 'and any liquid the chief use of which is as a fuel,' etc., leaving out the word 'other' which connects the fuels described in

the last class with the two first mentioned.''

Westroads seeks to distinguish Coleman v. United States, *supra*, by noting use of the conjunction ''and'' as opposed to the ''or'' found in paragraph Twenty-ninth (B). We fail to see how the effect, discussed in Coleman, of the word ''other'' could be erased by a change in the conjunction which precedes it. Contracts are to be construed according to the usual meaning of the words used. See Liggett v. Bertwell, 111 Neb. 843, 198 N. W. 154. Without some compelling reason for doing so, this court cannot accept the strained interpretation advanced by Westroads. Still, the provision, when viewed within the context of other provisions of the lease, does admit of some ambiguity. If the paragraph was intended to reach only property of the tenant, why enumerate items such as heating equipment, which was clearly property of the owner, within the paragraph? Because of this ambiguity, we are justified in looking beyond the language of the lease.

The correctness of our interpretation, according to the plain meaning of the words used, is confirmed by a look at the possible rationale for the insertion of a paragraph like Twenty-ninth (B). Both parties have attempted to supply this rationale. Westroads contends that its interpretation of Twenty-ninth (B) would require the tenant to pay the taxes on those items of property which uniquely benefit the tenant. The first problem with this contention is that ''benefit'' in any commercial transaction is a two-sided coin. This is a long term (25 years) lease. Westroads had ample opportunity to increase the lease price and thus its benefit to cover the cost (including anticipated taxes) of negotiated improvements beginning with the concrete floor and going right down to the last lighting fixture, and there is no reason to believe they did not do so. Second, Westroads' interpretation results in the inclusion of a disorderly conglomeration of items inconsistent with its

"benefit" theory. For example, why would the drafter include an item like heating equipment while excluding an item like plumbing equipment? Is the latter any less for the benefit of the tenant than the former? The parties to an agreement are, of course, free to include within such a clause any collection of items they choose and there is no requirement that the collection "make sense" to parties not present at the negotiations. However, where it is not clear from the language of the instrument that such a collection was indeed intended, an interpretation evincing a more rational purpose will naturally be favored.

A rational purpose can be discerned in paragraph Twenty-ninth (B) if it is construed to include, as appellant argues, only property "of the tenant." That purpose is the shifting of unanticipated taxes to the tenant "since the ideal shopping center lease will be as close to a net lease as possible." Kranzdorf, Problems of the Developer, 1965 U. Ill. L. F., 173. Paragraph Twenty-ninth appears to be a common "tax-stop" clause designed to deal with these unanticipated taxes. Since paragraph Twenty-ninth (A), discussed above, shifts the cost of increased tax rates or assessed valuations, the purpose of Twenty-ninth (B) appears to be to protect the landlord against the risk that the tenant's personalty or trade fixtures will be taxed to the landlord. Under paragraph Twenty-ninth, the landlord agrees to pay all taxes except those specifically agreed upon. This is merely a codification of the general rule. See 49 Am. Jur. 2d, Landlord and Tenant, § 354, p. 365. Most of the specifically enumerated items, e.g., lighting fixtures, interior partitions, and heating, cooling, or ventilating equipment would be physically attached to the real estate. Such items, if they are the property of the owner, become part of the real estate when they are fixed to it. See Runner v. Pierson, 144 Neb. 847, 14 N. W. 2d 847. It is only

when they are the property of a tenant, and hence trade fixtures, that they do not become part of the real estate upon being affixed to the property. See United States v. Lambert, 362 F. Supp. 609 (Dist. Neb., 1973). Nonetheless, "Many municipalities include personal property within the demised premises in real estate tax assessments. Accordingly, the lease should provide that in such event the tenant will be responsible for the entire tax upon such personal property of the tenant." See Kranzdorf, Problems of the Developer, 1965 U. Ill. L. F., 173. In other words, the landlord needs protection against having to pay taxes on things which are not his.

Westroads is quick to point out the already mentioned inconsistency in the appellant's interpretation, namely that it was known from the beginning that some of the enumerated items, e.g., heating and cooling, would be property of the owner. The explanation may be in the fact, revealed in testimony, that paragraph Twenty-ninth (B) was taken from a lease originally designed for another shopping center. Under that lease, all of the enumerated items may indeed have been property of the tenant. It is, however, sufficient to point out that the lease was drawn by Westroads. Ambiguities in a contract should be construed most strongly against its author. If the language used in a contract drafted by one of the parties is susceptible of more than one meaning, it should be given the construction which the other party would be fairly justified in giving it. See Don Nelsen Constr. Co. v. Landen, 198 Neb. 533, 253 N. W. 2d 849. Thus, Nebraska law would require us to reverse in this situation even if the tenant's interpretation of the disputed provision were only "as good as" that of the landlord. We feel it is better.

We find that Westroads is entitled to reimbursement under paragraph Twenty-ninth (B) only if property of the tenant was assessed in the land-

lord's general tax statement. As the tenant introduced evidence that the tenant's personal property, including trade fixtures, were separately assessed and taxed, the burden of establishing, in effect, a double taxation, should be on Westroads.

The decision of the trial court is affirmed in part, and in part reversed and remanded.

AFFIRMED IN PART, AND IN PART REVERSED AND REMANDED.