WARREN COUNTY, IOWA, appellee, v. CHARLES N. ELMORE and HAWKEYE SECURITY INSURANCE COMPANY, appellants.

No. 49588.

(Reported in 93 N.W.2d 756)

DECEMBER 16, 1958.

R. E. Killmar, of Osceola, and M. D. Hall, of Indianola, for appellants.

P. F. Elgin and M. C. Herrick, both of Indianola, for appellee.

LARSON, J.—The trial court rendered a judgment in the sum of $1819.67 against the defendants, Charles N. Elmore, a former county superintendent of schools, and his surety, Hawkeye Security Insurance Company, in a suit for an accounting of county funds coming into the superintendent's hands by virtue of his office. It is defendants' position that under the record no shortage appears. Plaintiff claims a shortage of $2830.62 appears, and both appeal from the trial court's judgment.

Several contentions were advanced by defendants, but consideration need be given only one query: "Was there any proof to warrant an accounting or prove anything due plaintiff if one was struck?"

The case is an aftermath of a criminal action brought by the State against Elmore wherein he was charged with and convicted of larceny by embezzlement. We affirmed that conviction in State v. Elmore, 246 Iowa 1318, 70 N.W.2d 166. The shortage we fixed at $744.98, and a mandatory fine in that sum was assessed against defendant Elmore.

In the opinion rendered by this court in that case extensive consideration was given to the testimony and exhibits relating to the same accounts before us in this appeal. As we have not changed our position as to the credence to be given that evi-

dence, it will be unnecessary to repeat that discussion and the citations. With perhaps an exception or two, the same witnesses testified in each case. The principal witness for the State, as well as for the county herein, was State Auditor Loomis, who had made a careful and exhaustive firsthand study of the available accounts in the county superintendent's office covering the identical period of time involved from January 1, 1951, to June 3, 1953. This special audit had been requested by the County Board of Supervisors, and the report of the findings was made to the state auditor's office. A copy of that report was furnished the county and it appears in this record as Exhibit "I-1". It will be recalled that audit showed no deficiency in the book depository account. The auditor's difficulty came when he attempted to follow the receipts and disbursements reflected in a bank account kept in the name of "County Superintendent's Office, by Charles N. Elmore" at the Peoples Trust & Savings Bank in Indianola.

This account apparently was established sometime before 1950 to handle the funds of several school districts that desired to use motion pictures in their schools. During this period ten school districts contributed $40 each toward the rental of films, purchase and replacement of motion picture machines, their repair, etc. The true source of these funds does not appear, but we were satisfied in the former case that they were properly classified as public funds under section 710.1 of the Code. For some reason the defendant Elmore began to use this fund to purchase and sell to the various districts and the teachers other supplies, such as floor oil, sharpeners and paper. The bank account also became the depository for private purchases, such as teachers' dues, magazine subscriptions, banquet tickets, etc. Trying to unravel such a commingled account became the auditor's task when it appeared certain receipts for books sold the various schools might have been deposited in that account. As all deposit slips were not available and did not show the source of the deposited sum, the auditor also resorted to the records of credit sales to the various schools in the county (Exhibits "Q", "R", and "S"). From these invoices and the bank deposits he was able to arrive at the sums collected by Elmore during that period. As to their proper division between county, school dis-

trict, and private ownership, the task was difficult if not impossible.

While the invoices gave some hint as to the items charged, an accurate check could not be made. Testimony by the office employees disclosed that when a check or cash was received from the billed districts, Mr. Elmore made the division without a record thereof, and that receipts from the sale of county books were supposed to be placed in the green box in the office and later turned in to the county treasurer. Receipts from the sales of supplies, movie contributions, and private funds of the teachers for tickets, magazine subscriptions, etc., went into the blue box and were deposited in the bank account from time to time. Cash sales receipts were placed in the same respective boxes, but there was no record of any kind kept as to these sales.

One witness estimated the cash sales at about $5 per week. Another denied this and said they were very few, and cash from those sales was put in the proper boxes.

Accounts so foolishly kept would and did eventually become all fouled up, and some county book funds apparently reached the bank account. We have no way of telling the amount, but defendants contend the state auditor's shortage figure of $965.75 as of June 3, 1953, more than covered those county funds.

One of the principal issues or points of contention involves the state auditor's credit given Elmore for expenditures made by him for school supplies, magazines, banquets, dues, movie rentals, repairs, etc. Clearly, considerable amounts were paid out from this hybrid revolving fund for these obligations over a two and a half-year period. The state auditor in his computations made what he considered a fair division of the three items, gave credit where obvious expenditures had been made out of the receipts for supplies, movie films, teachers' dues, etc. This sum he fixed at $1931.81 (Exhibit "J-1"), and plaintiff complains as to its justification.

The trial court in its original ruling, under date of September 24, 1956, referred to our observation in the case of State v. Elmore, supra. There we said at page 1323 of 246 Iowa: "We have given the evidence with respect to the general operation of the office as related by the State's witnesses, but the records of the office are inadequate to reconstruct a statement

of all receipts and disbursements showing source and application."

The court then wisely concluded: "This court is not an accountant and must depend upon the examination of Mr. Loomis as testified to by him, and the audit, Exhibit 'I', which was submitted to the State Auditor's office." It seemed to feel then that the fair and just conclusion, in the light of the incomplete records maintained, was that the court must rely to a great extent on the audit made by the state auditor and upon his findings and conclusion relating thereto; that it was the best evidence available.

Basing its conclusion largely on that evidence, the trial court found the shortage involving public funds to June 3, 1953, was $965.75, the figure originally determined by the auditor. To this amount it added the sums of $89.97, which was a refund check for books returned to McCormick Mathers Publishing Company, $72 which was another refund check from the same company, and $310.98 which was a refund check for books returned to John C. Winston Company. The first and last items Auditor Loomis explained were unknown to him or were not considered by him in his former audit. The court credited the sum of $251.50 which had been deposited in the superintendent's bank account involved in the audit *after* the audit sum of $965.75 had been struck. It then found the amount due the county was $1187.20, and judgment was entered accordingly.

The defendants, without waiving their right to appeal, promptly moved the court under R. C. P. 179 to amend its findings and modify the judgment for the reason that subsequent to the audit statement of $965.75 the record evidence disclosed that in addition to the $251.50 deposit, the defendant Elmore had paid to the county treasurer the sums of $431.46 and $282.79. The fact was pointed out that Mr. Loomis had already considered the $72 refund in his $965.75 computation. Thus defendants prayed that the judgment be reduced so as not to exceed the sum of $400.95.

Thereafter the trial court filed a supplemental ruling and came up with a balance due the county of $1819.67. Judgment was modified accordingly. Defendants appealed and plaintiff cross-appealed.

In its supplemental ruling the trial court apparently abandoned the auditor's capitulations and assumed total sales as shown by the bank deposits and the numerous invoices (Exhibits "Q", "R" and "S") to the various school districts in the sum of $4218.06 less the bank balance at the beginning of the accounting period of $380.95, or a total of $3837.11, were county funds. To this sum the court added the two McCormick-Mathers refund checks of $72 and $89.97 and the John Winston refund check of $310.98, which were clearly county funds, making a total of $4310.06, for which it required an accounting in this case. Allowance was made only for the amounts paid to the county treasurer by Elmore, leaving the balance of $1819.67 unaccounted for herein. The trial court neglected and refused to credit any sums obviously paid out for the furnished supplies for teachers' dues, banquets, etc., sums which obviously helped make up the receipts for which he was held to account. It failed to give credit for the necessary expenditures for films and movies paid from the receipts and which the evidence disclosed entered the bank account. We cannot agree with this computation: first, because there was no evidence to sustain the finding that all the sales involved county property; and second, because obviously credits for noncounty books and supplies involved were not considered or allowed in any amount.

I. As a general rule in a suit for accounting the plaintiff has the burden of proving there was something due it before it was entitled to an accounting. Oskaloosa Sav. Bk. v. Mahaska County State Bk., 205 Iowa 1351, 1360, 219 N.W. 530, 60 A. L. R. 1204, and cases cited therein; Benson v. Charles Weitz' Sons, 211 Iowa 489, 231 N.W. 431; Brown v. Conway, 201 Iowa 117, 206 N.W. 665; 1 C.J.S., Accounting, section 9, page 643; Winn v. Rudy-Patrick Seed Co., 249 Iowa 431, 86 N.W.2d 678. Here it was the plaintiff-county's burden to aver and prove that there was something due it before it was entitled to an accounting. Ownership of all the invoiced property sold was not shown in the county. In fact, it clearly appears otherwise.

While it is true the auditor expressed the belief that the majority of the funds in the involved bank account was county property and suggested that the balance in the superintendent's account be closed out and the money paid in to the county

354

treasurer, he did not single out or designate *any* sum in that audit which could positively be identified as county funds. In fact, the $310.98 refund, clearly county funds, and which the exhibits show went into the superintendent's bank account on or about May 3, 1952, Mr. Loomis did not include in that accounting.

The trial court's supplemental computation and judgment gave no consideration and no credit to Mr. Elmore for necessary expenditures to procure the supplies, furnish magazines, banquets, movies, etc., although some of them appear in the invoices as items sold to the schools. There was absolutely no showing that county funds had been used in the purchase of these items. Thus the court ran into the very question Mr. Loomis tried to avoid in his computations, namely, how to determine what part of the money paid in pursuant to the invoices and deposited in the bank account was private funds, what part belonged to the school districts subscribing to the movie program and to other districts for supplies, and what part was for books bought and paid for originally by the county. As previously pointed out, this division was quite impossible of accurate determination, and if we were to hold the county to a strict showing as to which were county funds in this revolving fund, there could be no judgment for it under this record. We prefer to accept the state auditor's accounting as to *all* funds, and its later satisfaction by full payment.

It is true that once certain funds of the principal have been traced to the agent, public officer, or employee, it then becomes his duty to account therefor. Berry Seed Co. v. Hutchings, 247 Iowa 417, 74 N.W.2d 233; State v. Elmore, supra, 246 Iowa 1318, 70 N.W.2d 166; Rhea v. Brewster, 130 Iowa 729, 107 N.W. 940; 43 Am. Jur., Public Officers, 255. We apply that rule here.

The burdens here become unimportant as to the mingled funds, for it is undisputed that the entire balance in the bank account was turned over to the county on July 9, 1953, in the sum of $534.29. Since no one has objected to this transfer, it is clear the county became the sole benefactor from the receipts of this unauthorized revolving fund when it was eliminated.

That transfer included the $251.50 that Elmore had returned to the bank account after the audit. It may be recalled his explanation as to this transaction was that by making the television purchase through this account he could obtain a school discount. How far this practice went we do not know, but it gives some idea why this revolving fund outside the county treasurer's office was maintained.

It will be recalled that in addition to the $251.50 placed in the superintendent's bank account, Elmore paid to the county treasurer two amounts totaling $714.25. Thus as far as the items included in the Loomis audit are concerned, we have a full and complete accounting, and must find that the defendants are not indebted to the county or anyone else for any sums considered therein.

■ II. Of course the issue before us is purely a question of fact in an equity proceeding and, as such, is triable de novo. After a careful re-examination of the testimony and the exhibits, we adopt the state auditor's conclusion that the balance of public funds unaccounted for June 3, 1953, was $965.75. We also find this amount included the $72 refund from McCormick-Mathers Company.

While the issues in the criminal case and in the present matter were not the same, and our decision in that case is not necessarily the law of this case, we should be most reluctant to discredit or reject testimony here that we considered and accepted in the criminal matter. We prefer to take the position apparently adopted in the trial court's first finding and, as there was no substantial conflicting evidence with the state auditor's findings and conclusions, we must give them considerable weight in this accounting action.

III. However, under the record in this case, four items involving county funds had not been considered in the state audit.

As previously pointed out, there were two items involving refunds from book companies. These checks were made out to Mr. Elmore as superintendent and apparently were not turned in to the county treasurer as required. In this suit Mr. Loomis testified that he did not learn of the $89.97 refund until after his audit, and that he did not include the $310.98 refund in his

accounting although he did not recall why it was left out. We are inclined to accept *all* of his testimony concerning his audit, and shall not attempt to credit part and reject part. As these refunds were clearly county property and came into his hands by virtue of his office, Mr. Elmore must account for them. Thus we conclude the plaintiff has pleaded and proved its right to this accounting.

In addition to the two items of refund, it appears from *this* record that two additional credits were due Mr. Elmore. The auditor was at a loss to explain why they had not been considered after the county treasurer testified that she received from Elmore's office the sums of $10.96 on June 23, 1951, and $67.83 on November 5, 1951. She had credited them to the board of education fund rather than the county fund, but Loomis admitted these amounts should have been considered. So in fairness to all parties, it is necessary that defendants be given credit for $78.79, and when so deducted from the $400.95 above set out, we arrive at what we believe under this record is the only sum that can reasonably be found due Warren County.

IV. The county's contention that cash sales in the office, which one witness estimated at about $5 per week, should also be charged against Elmore cannot be sustained. Even if these sales had been identified as county funds, such an estimate unsubstantiated by other evidence is too speculative and uncertain. It cannot be accepted here as substantial proof either as to amount or ownership.

Mr. Elmore was, of course, to blame for this foolish effort to avoid running all county items through the county treasurer's office. Already he has paid a dear price for his mistakes. Inferences should not be indulged to punish him further, for it may well be that had he kept sufficient records he could have accounted for all the moneys, public and private, that passed through his office. Nevertheless, his clear misuse of public funds, as distinguished here from county funds, could not be condoned.

V. It would, we think, unduly extend this opinion to discuss the other contentions of the parties. It is sufficient to say we find herein no agreement, express or implied, upon which an accord and satisfaction could be based. The special audit by

the state auditor is not an account stated, nor is it an offer by the County Board of Supervisors, to settle the account. It, of course, may accept or reject the audit or be governed by it in making its own agreement of settlement.

■ A voluntary payment to the county treasurer of the sum an auditor finds due cannot of itself amount to an agreement of the board to accept or reject the sum shown due.

■ VI. Here we have accepted the auditor's figures as to the amount due and have found it paid, with the exception of the four items mentioned. Since these were not previously considered, the accounting action was justified and the finding that some amount is still due the county is correct.

The judgment of the trial court, however, must be modified and reduced to the sum of $322.16, and the costs of these appeals shall be divided equally between the plaintiff-cross-appellant and the defendants-appellants.—Affirmed and modified.

All JUSTICES concur except OLIVER, J., who dissents.

OLIVER, J. (dissenting)—I feel compelled to dissent.

In State v. Elmore, 246 Iowa 1318, 1329, 1330, 70 N.W.2d 166, 172, we said, unanimously:

"At the outset it is well to observe the defendant cannot be found guilty merely because he kept the affairs of his office in a slipshod and unbusinesslike manner. * * * defendant can only be found guilty upon the State's evidence that he converted public money to his own use."

Now the majority, most of whom joined in the foregoing statement, repudiate it, stating:

"Mr. Elmore was, of course, to blame for this foolish effort to avoid running all county items through the county treasurer's office. Already he has paid a dear price for his mistakes. Inferences should not be indulged to punish him further, for it may well be that had he kept sufficient records he could have accounted for all the moneys, public and private, that passed through his office. Nevertheless, his clear misuse of public

funds, as distinguished here from county funds, could not be condoned."

The record does not support the characterization of Mr. Elmore's operations as, this *foolish effort* or as *mistakes for which he has paid a dear price* or the statement, *it may well be that had he kept sufficient records he could have accounted for all the moneys that passed through his hands.*

I am convinced State v. Elmore, supra, was not erroneous and should not be overruled. The majority might well have limited its opinion to the consideration of the case before it.