INDUSTRIAL LOAN & INVESTMENT COMPANY, A CORPORATION, APPELLANT, V. KEITH D. LOWE ET AL., APPELLEES.

114 N. W. 2d 393

Filed April 6, 1962. No. 35146.

*Gaines, Spittler, Neely, Otis & Moore,* for appellant.

*D. A. Russell* and *John E. Sidner,* for appellees.

Heard before CARTER, MESSMORE, YEAGER, SPENCER, BOSLAUGH, and BROWER, JJ., and SCHEELE, District Judge.

BROWER, J.

Plaintiff Industrial Loan & Investment Company, a corporation, brought this action against Keith D. Lowe and Agnes Lowe, husband and wife; Mamie E. Forbes and Vern Forbes, wife and husband; and Donald D. Bastemeyer, Commissioner of Labor of the State of Nebraska, defendants, to determine the rights and liens

and their priority in certain real estate in Harlan County, Nebraska, and to foreclose and sell the premises according to law and apply the proceeds among the liens and interests as the court should determine. By leave of court Lexington Mill and Elevator Company, a corporation, was later made a party defendant.

For convenience Donald D. Bastemeyer, Commissioner of Labor, will be referred to as Bastemeyer, and Lexington Mill & Elevator Company as Elevator. The other defendants will be referred to by their last names except where only one of the married defendants is designated.

Plaintiff's petition as it appeared at the time of trial sets out an installment contract to purchase the premises involved for $7,000, dated May 1, 1956, and recorded July 20, 1957, executed by the Forbes as vendors to the Lowes as vendees. It further shows an assignment of this contract to the plaintiff by the Lowes which was given to plaintiff to secure a note of $3,000 and interest dated July 19, 1957. The assignment was recorded July 24, 1957. The defendants Bastemeyer and Elevator were alleged to be subsequent lienholders.

The defendants Forbes filed an answer and cross-petition. They admitted the execution of the contract for sale of the real estate between themselves as vendors and the Lowes, and set out a copy of it. The cross-petition then set out that the Lowes came into possession of the premises and made certain payments thereon until September 1, 1959, and thereafter became in default and abandoned the premises; that in March 1960, the Forbes canceled the contract and notified the Lowes and the plaintiff of the rescission. It prayed that the court confirm the action of the Forbes in cancellation of the contract and quieting the title to the premises in Mamie E. Forbes as the record owner thereof.

Plaintiff filed a reply admitting certain undisputed matters and denying all others. Defendant Bastemeyer

filed a cross-petition and the defendants Lowe and Elevator defaulted.

Trial was had and on August 17, 1961, the court rendered judgment dismissing the plaintiff's petition and quieting the title to the premises in Mamie E. Forbes as against all the defendants except as to the marital rights of Vern Forbes, her husband.

The plaintiff filed a motion for new trial which was overruled by the trial court and it brings its appeal to this court.

Plaintiff's assignments of error are five in number but their substance is as follows: That the court erred in dismissing the plaintiff's petition, in finding in favor of the defendant Mamie E. Forbes, and in granting her relief under the cross-petition; and that the court erred in quieting title in Mamie E. Forbes against the plaintiff and the defendants, including certain defendants in default, but who had not been served again after the Forbes' cross-petition was filed out of time.

The facts as disclosed by the evidence in this case are not disputed in any material aspect. The legal rights of the parties that flow from the facts are the only questions in controversy.

The real estate contract executed between the Forbes and the Lowes on May 1, 1956, recited the Lowes had paid $75 down on signing the contract and were to pay $75 on the first day of each month on the principal and 5 percent interest every 3 months on the unpaid balance. It contained also the following provisions:

"Now, if the said parties of the second part shall pay the sum as above set forth, time being the essence of this contract, and shall pay all taxes and assessments whether mortgage note, special or general, which may become due on said real estate for the year 1956, and thereafter until the above payments are all made, then said parties of the first part shall at his own cost, execute and deliver to the said parties of the second part, or their assigns upon surrender of this contract, a war-

ranty deed to the above described Tract A, and a quit claim deed for Tract B.

"AND IT IS FURTHER AGREED that in case any payment, either of principal or interest, remaining unpaid for a space of thirty days after the same shall become due, or a failure to pay any taxes or assessments, at the time the same become due, then in that case, the whole amount unpaid on this contract shall become due and payable without further notice; and such delinquency in payment, or the failure in other respects by the parties of the second part to perform the stipulations of this contract, or any part of them, shall entitle the parties of the first part to immediate possession of the premises described herein, and the parties of the second part shall forfeit all payments made under this contract."

The Lowes had been in possession of the premises before buying them and continued to occupy them thereafter. They were never prompt about making payments, the last one being made on September 1, 1959. In all they had paid $3,955.03, of which $930.03 was interest. On October 1, 1959, there remained $3,925 unpaid principal and they never made payments thereafter.

Plaintiff loaned Lowes $3,000 cash on July 19, 1957, taking a promissory note in that amount payable in monthly installments of principal and interest in the amount of $142.92. Only two installments were paid and on the day of trial $2,750.42 principal and $928.27 interest were due thereon, which was secured by assignment of the real estate contract on these premises and certain school equipment and horses. No recovery could be made on the chattels because of the discovery of prior liens on a portion thereof and the inability of the plaintiff to locate the rest of the property. The plaintiff did not assume any obligation of vendees on the Lowes' contract with the Forbes in its assignment.

In December 1959, Keith D. Lowe left Nebraska and went to California, and in January or February 1960,

Agnes Lowe followed him with the children, leaving the premises unoccupied.

The Elevator recovered a judgment against Keith D. Lowe on October 21, 1957, for $5,800, and Bastemeyer, on March 6, 1959, filed a lien against him for $163.86. In their absence on May 21, 1960, the Lowes' remaining personal property was sold by an auctioneer apparently acting for them and out of the proceeds was paid a federal tax lien filed against Keith D. Lowe. Neither the plaintiff nor the Forbes received anything therefrom.

Upon learning that the Lowes had left the property and gone to California, Mamie E. Forbes, on March 3, 1960, instructed her attorney to notify the Lowes and the plaintiff that she had elected to terminate the contract, to take possession of the premises, and to retain the payments already made. She also asked that the plaintiff discharge the cloud on the record caused by its assignment of which she had learned about that time. On the same day the attorney by letter directed to plaintiff and the Lowes notified both of them of his clients' intentions, including a notice that if the plaintiff's lien was not discharged the Forbes would bring an action to quiet title. An exchange of letters between the attorneys for plaintiff and attorney for the Forbes followed in which plaintiff's counsel sought the amount still owing on the real estate contract. The Forbes' attorney at all times reiterated that his clients had rescinded the sale and the contract was at an end, though he finally gave the amount due thereon.

After the sale of the Lowes' personal effects, Mamie E. Forbes obtained possession of the premises in the latter part of May 1960. The buildings were then in bad repair. The windows and screens on the chicken house were destroyed and the storm windows and other windows were broken. The hot water heater and pipes were frozen and broken, requiring replacement, and the septic tank had to be cleaned. She spent for taxes, insurance premiums, and repairs necessary to make the prop-

erty rentable $382.07, and she estimated the total damage to the property to exceed $1,000. On June 1, 1960, she rented the premises and has collected $35 a month rent thereafter. There was testimony that the premises at the time of trial were of the value of $6,000.

Under the facts set out it is to be noted that the real estate contract involved by its express terms provided that time was of the essence. It further expressly provided that if any payment of principal or interest remained unpaid for 30 days the whole amount unpaid on the contract should become due and payable without notice, and the first parties, the vendors, should be entitled to immediate possession of the premises and the second parties should forfeit all payments made under the contract.

In Abbas v. Demont, 152 Neb. 77, 40 N. W. 2d 265, this court stated the following rule: "Where a vendee is in default under a contract of sale of real estate, making time the essence and providing for a forfeiture in case of default, and there has been no waiver of the provisions of the agreement or a defense thereto established, the contract will be enforced as made."

The cited case was an ejectment case where the defendant vendee claimed a waiver of timely payment and a counterclaim as an equitable defense. The trial court found against the defendant on the waiver and counterclaim but granted plaintiff, the assignee of the vendor, a strict foreclosure and allowed the defendant 60 days in which to redeem. This court reversed the judgment and gave the plaintiff the immediate possession of the property.

The case of Kear v. Hausmann, 152 Neb. 512, 41 N. W. 2d 850, was an action to quiet title brought by a vendor, such as is pleaded by the Forbes in the case now before the court. The defendant vendee sought to reform the contract which in effect would have extended the time of payment so there would have been no default. The lower court granted reformation and granted

specific performance to defendant. This court held that the evidence did not permit reformation and, applying the same rule as set out in Abbas v. Demont, *supra,* held the plaintiff vendor was entitled to have the title quieted. The contract contained a provision that time was of the essence and provided for forfeiture on default.

Counsel for the plaintiff argue in their brief that though the contract in the case before us made time the essence, it did not specifically say that in the event of default the vendor might rescind or cancel. Their brief seems to contend that some such precise terms must be used to give the right to rescind. They cite no cases that affirmatively sustain their position. In fact those cited are cases where such terms were used and discussed by the court and held to permit rescission. They then argue conversely therefrom that in their absence the contrary rule applies and rescission or cancellation cannot be granted.

In Kobza v. Spath, 166 Neb. 623, 90 N. W. 2d 246, the court stated: "In the ordinary contract for the sale of real estate, equity will not regard time as of the essence, but it may be made such where so expressly stipulated or an intention that it shall be such is clearly manifested by the agreement as a whole, construed in the light of the surrounding circumstances." In the case quoted there were no specific words of rescission or cancellation mentioned in the opinion, yet this court reversed the judgment of the trial court which had granted specific performance to the vendees and quieted the title to the premises involved in the vendor because the vendees had defaulted in performance. Neither did the contract expressly make time the essence of the contract.

In the contract in the case before us not only was time made the essence of the contract by its express terms, but the contract further provided that in case of failure to pay any amount of principal or interest for the space of 30 days after due the whole amount should

become due and payable without further notice. It then provided that in that event the parties of the first part should be entitled to immediate possession of the described premises, and the parties of the second part should forfeit all payments made under the contract. It is quite clear that the original contract contemplates a rescission or cancellation on default. If the vendees were to lose possession and the past payments were to be forfeited it is difficult to imagine anything remaining for the benefit of the vendees. Under these circumstances it is apparent the parties considered the contract would be at an end.

The plaintiff was not a party to the original contract. Any interest which it has therein is as an assignee by virtue of an assignment of the vendees for security only. The assignment contained no clause by which the plaintiff agreed to be bound and assume the obligations of the contract. In Babson v. Village of Ulysses, 155 Neb. 492, 52 N. W. 2d 320, under such circumstances, it was held: "An assignment of a contract or a right flowing therefrom does not create a contractual obligation between the assignee and the other party to the contract in the absence of assumption of the liabilities of the assignor by the assignee. 4 Am. Jur., Assignments, § 102, p. 310; Tolerton & Stetson Co. v. Anglo-California Bank, 112 Iowa 706, 84 N. W. 930, 50 L. R. A. 777; Pioneer Loan & Land Co. v. Cowden, 128 Minn. 307, 150 N. W. 903."

Plaintiff contends that in a court of equity Forbes should not have been granted a decree quieting title because in the present case it would be inequitable to do so. The cases cited by its counsel are however generally those involving strict foreclosure requested by the vendor in an action brought by him and have little application to suits brought to quiet title, or at law in ejectment after a forfeiture where time is made the essence of the contract.

Plaintiff assumed no obligations under the contract.

It did not get into contact with the Forbes until after the letter from their attorney in March of 1960, though its assignment was in July 1957. The agreement was between the Forbes and the Lowes and plaintiff was not in privity of contract with Forbes. Payments in March 1960, were 5 months in arrears. The Lowes had abandoned the premises. The property was in bad repair and was depreciating in value. Under the circumstances we see no reason why it would be inequitable for a court to enforce the forfeiture according to the terms of the contract.

Plaintiff contends that the judgment of the trial court was erroneous because the defendants Lowes and Elevator, although served by the plaintiff, had not been subsequently served as to the cross-petition filed by the defendants Forbes which was not filed until after the answer day of all the defendants. The plaintiff was in any event in court. It had filed its petition and took part in the trial of the cause. If Lowes and Elevator, or either of them, were not properly in court it is a matter between the other defendants and the cross-petitioner Forbes and cannot be availed of by the plaintiff. Where the error concerning which complaint is made does not affect his interests in any way, one who was properly a party to the cause below, and against whom judgment was rendered, cannot predicate error upon the rendition of judgment against a defendant not properly served with process, who has failed to appeal from the judgment. 5 C. J. S., Appeal and Error, § 1500, p. 856.

The errors complained of by the plaintiff cannot be sustained and the judgment of the trial court must be affirmed.

AFFIRMED.