TERRENCE T. CIMINO, APPELLANT, V. W. A. PIEL, INC., A NEBRASKA CORPORATION, APPELLEE.
416 N.W.2d 505

Filed December 18, 1987. No. 86-513.

George O. Rebensdorf, for appellant.

J. Thomas Rowen of Miller, Carpenter, Rowen, Fitzgerald and Coe, P.C., for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, and GRANT, JJ., and COLWELL, D.J., Retired.

PER CURIAM.

Plaintiff, Terrence (Terry) Cimino, has appealed from the court's judgment dismissing his cause of action. The relevant assignment of error is that the trial court failed to find that plaintiff had proved his right to recover on an open account.

The procedural posture of this case is somewhat misleading and confusing. Both parties refer to plaintiff's action as one for an accounting. However, in his amended petition, plaintiff simply alleges that he was an employee of the defendant, that he was wrongfully discharged, and that he was owed the balance remaining in his deferred compensation account. At the conclusion of plaintiff's case, a ruling on defendant's motion for dismissal for failure to prove a right to an accounting was deferred. The defendant then presented its case, and, on final rest of both parties, defendant's motion to dismiss was sustained, as was plaintiff's motion to dismiss defendant's counterclaim.

Generally, in ruling on a motion to dismiss made at the close

of the evidence, the court resolves the controversy as a matter of law, and such a motion may be sustained only when the facts are such that reasonable minds can draw but one conclusion. *Herman v. Bonanza Bldgs., Inc.*, 223 Neb. 474, 390 N.W.2d 536 (1986). This means that in considering the evidence for that purpose, the party against whom the motion is made is entitled to the resolution of every controverted fact in his or her favor. *Herman v. Bonanza Bldgs., Inc., supra.*

However, in this case the parties apparently tried the case in the district court on the theory that this was an action for an equitable accounting. Therefore, we will follow the general rule that we will dispose of the case on appeal on the theory on which it was presented in the trial court. *Lincoln Grain v. Coopers & Lybrand*, 216 Neb. 433, 345 N.W.2d 300 (1984). This means that we review this action de novo on the record, subject to the rule that where credible evidence is in conflict on material issues of fact, we may consider that the trial court observed the witnesses and accepted one version of the facts over another. *In re Interest of K.C. and C.C.*, ante p. 84, 416 N.W.2d 24 (1987).

Joseph (Joe) Cimino was for all intents and purposes the owner and sole stockholder of the defendant corporation, a retail pharmacy. He owned 99 percent of the capital stock and was president of the corporation. He was also the father of the plaintiff.

Plaintiff was a registered pharmacist, and went to work full time for the defendant on January 1, 1978. He became a member of the board of directors and was made secretary-treasurer of the corporation. He was paid a beginning salary of approximately $17,000 per year. Joe Cimino testified at one point that plaintiff's basic salary was approximately $21,000. Joe discharged Terry on July 31, 1982. This appeal does not involve any question of cause for termination, and it is therefore unnecessary to detail the many complaints Joe had concerning plaintiff's conduct as an employee.

Sometime during Terry's employment, the corporation's accountant, Amil Chilese, suggested that the corporation should set up accrued salary accounts for its officers, who were Joe and Terry. Terry testified that these accounts were set up to

compensate the officers so as to reduce the corporation's liability for income taxes, and at some point in time, "it was, like, a savings account." Chilese testified that the account was set up for tax reasons and to help Terry buy the stores eventually. Every year the amount set aside for the accounts was based on excess cash available to the corporation in an amount Chilese felt would reduce the corporate liability for federal income taxes to a "quite reasonable level." The account was carried as a liability on the corporate financial reports each year and was figured into the amount listed on the corporation's income tax form for the officers' compensation.

Both Terry and Joe used the account for personal purposes. Because Terry was responsible for the books of the corporation, if Joe would write a check for personal purposes, Terry would subtract it from the accrued salary account. Terry, from time to time, would take money from the account to meet an obligation and then would replace it. He stated that he replaced the money because he did not want to deplete the account. Terry thought that if he depleted the account Joe would be concerned, but that Joe would not have a right to say anything. Terry did admit, however, that there was never any board resolution as to what would be done with the accrued salary account. His detailed testimony in that regard is particularly enlightening:

Q. Who owned the company?

A. He [Joe] did.

. . . .

Q. You were an employee of that company that he owned?

. . . .

A. That's correct.

Q. Okay. You didn't have an employment contract?

A. Correct.

Q. You have nothing in writing about any compensation or this accrued salary that we have talked about in writing?

A. We did not have a written agreement, no.

Q. Okay. There was no board resolution as to how you were — you would get — would be compensated; is that correct?

A. We didn't have a formal board meeting with formal written resolutions.

Q. Do you understand the question? Was there a board resolution or not?

A. As to how I was to be compensated?

Q. Yes.

A. No.

Q. Was there a board resolution as to what would be done with the accrued officers' salaries?

A. No.

Q. Was there a board resolution as to when you would be paid or how you would be compensated?

A. No.

Amil Chilese testified that he knew of no board resolution that would entitle Terry to the account in the event he was terminated. He also stated that Terry would get the account if Terry stayed on with the corporation and if he performed properly, in Joe's opinion. Upon Terry's termination, there was $27,434.33 in his accrued salary account.

Joe Cimino testified that not only was there no written employment contract or board resolution authorizing the payment of the accrued salary account to Terry, there was nothing either written or oral by which he, Joe, was committed to pay the accrued salary account to Terry when Terry terminated his employment. Testifying further, Joe stated that the accrued salary account was set up by Chilese, basically for tax purposes, and eventually, if he, Joe, wanted to get out of the business, it would help Terry, and Joe's other two children, to buy into the store.

In order for a plaintiff to recover in an action for an accounting, the plaintiff must allege and prove that he or she demanded, and the defendant refused to render, an accounting. *Harmon Care Centers v. Knight*, 215 Neb. 779, 340 N.W.2d 872 (1983). The plaintiff alleged that repeated demands were made for an accounting, but offered no evidence on that issue.

Additionally, the burden is on the person seeking an accounting to allege and prove that there is something due him or her. *Warren County v. Elmore*, 250 Iowa 348, 93 N.W.2d 756 (1958). The only evidence plaintiff offered as to his right to the

accrued salary account upon his termination was his own assertion that it belonged to him. Terry's own subjective understanding of his right to that account is insufficient to establish his entitlement to that account. See *Johnston v. Panhandle Co-op Assn.*, 225 Neb. 732, 408 N.W.2d 261 (1987), holding that an employee's subjective understanding of "job security" was insufficient to establish an implied contract of employment to that effect.

In this case Terry himself agreed that the main reason the account was set up was for tax purposes. The only understanding, if there ever was any, was that Terry could use the account while he was employed, but that his entitlement thereto was contingent upon Joe's being satisfied with Terry's work. That contingency was never met; therefore, Terry was not entitled to the account. See *Feola v. Valmont Industries, Inc.*, 208 Neb. 527, 304 N.W.2d 377 (1981).

We conclude that Terry failed to meet his burden of proving his right to an accounting, and judgment was properly entered in favor of the defendant.

AFFIRMED.