G. Ronald Ames and Cherie A. Ames, Husband and Wife,
Appellees, v. George Victor Corporation, a Nebraska
Corporation, Appellant.
424 N.W.2d 106

Filed June 3, 1988.   No. 85-874.

Otto H. Wellensiek of Wellensiek, Rehmeier & Kelch, for appellant.

E. Dean Hascall of Hascall, Jungers & Garvey, for appellees.

Boslaugh, Caporale, and Grant, JJ., and Rist and Clark, D. JJ.

Grant, J.

Defendant, George Victor Corporation, a Nebraska corporation, appeals from a declaratory judgment of the district court for Sarpy County. In the district court, plaintiff G. Ronald Ames filed a declaratory judgment action requesting the court to construe a written lease between the parties and to define the rights and obligations of the parties under the lease. Defendant filed a cross-petition requesting the court to reform the lease to reflect defendant's interpretation of the lease. The court reformed the lease in three aspects, as set out below, and construed the lease. In this appeal defendant objects to the court's failure to reform the lease as defendant requested and objects to the trial court's construction of the lease payment escalation clause. We affirm as modified.

The record shows the following. On February 18, 1974, defendant leased the real estate which is the subject of this action to Hawaiian Village Partnership, which thereafter became Hawaiian Village, Inc., also a Nebraska corporation. Hawaiian Village, Inc., subsequently subdivided and developed this land into a lakefront residential community named Hawaiian Village, located in Sarpy County. On July 28, 1978, one of the plaintiffs, Ronald Ames, and his wife at that time, Susan L. Ames, executed a lot lease with Hawaiian Village, Inc., for Lot 2 in the Hawaiian Village development. The initial term of this lease was 60 years and 6 months, with an option to extend for an additional 35 years. After executing the lease agreement, Ronald Ames and Susan Ames built a home on Lot 2. The marriage between Ronald Ames and Susan Ames was dissolved, and Ronald Ames was awarded the Lot 2 lease. On September 7, 1982, Susan Ames conveyed her interest in Lot 2 by quitclaim deed to Ronald Ames. Ronald Ames later remarried, and on March 18, 1983, conveyed Lot 2 by quitclaim deed to himself and his wife Cherie A. Ames.

The lease agreement executed between Hawaiian Village, Inc., lessor, and Ronald Ames and Susan Ames, lessees, provided for an initial yearly rent of $500. The transaction was closed on July 28, 1978, and the annual rental was prorated for 338 days in the amount of $463. This amount covered the period up to July 1, 1979.

On May 22, 1984, Hawaiian Village, Inc., assigned all of its leasehold interest in the entire Hawaiian Village subdivision back to the owner, defendant George Victor Corporation.

At issue in this case is the following paragraph from the lot lease agreement, particularly that part which sets forth the amount and timing of the lease payment adjustments. The district court reformed the paragraph by deleting two words (shown in the following paragraph with a line through the deleted words) and substituting two other words (shown in brackets), and by adding the phrase "all-items" before "average of the Consumer Price Index." These changes are not at issue in this appeal. The paragraph in question provides:

> In consideration of the leasing of said lot, or lots, Lessee hereby covenants to pay the sum of $7,500.00, plus all

special assessments levied against the captioned lot and a yearly annual lot rent lease ~~prior~~ [price] of $500.00 per year, per lot, to be made on or before the 1st day of July, in each year during the term of this lease, for the succeeding year in advance, said payment to be made to Lessor or its assigns, as may be designated from time to time by the Lessor. It is further agreed that after any extension thereof ~~the~~ [or] expiration of a period of five (5) years and after each five-year period thereafter, during the term of this lease, the yearly lease payment set forth above shall be increased or decreased in an amount directly proportionate to the increase or decrease of the [all-items] *average* of the Consumer Price Index published by the Bureau of Labor Statistics of the United States over the five-year period *using the base for the first year of each five-year period*. The base for December, 1973, being 138.5. In further consideration of said leasing, Lessee agrees to abide by the terms of this Agreement hereinafter set out.

(Emphasis supplied.)

The trial court determined: "The word 'average' [emphasized above] . . . modifies 'Consumer Price Index . . .' and not '. . . over the five year period . . .' The word 'average' means 'all items average'. The language should read '. . . of the 'all- items average' of the Consumer Price Index. . . .'"

In its ruling, the district court reformed the above paragraph as set out above. The court also held that after these changes, the clause provided that "the amount of lease payment be adjusted each five years during the term of the lease."

The trial court further found that the lease between plaintiff and Hawaiian Village, Inc., commenced July 1, 1978; that the December 1978 Consumer Price Index (CPI) was 202.9; that the December 1978 CPI is the base-year CPI, since it is the first year of the 5-year period; that "[t]he fifth year of Plaintiff's lease expired during 1983"; and that the December 1983 CPI was 303.5. This, the court found, resulted in the computation for the amount of the annual base payment for the 5 years commencing July 1, 1984, being $500 times (303.5 divided by 202.9) equals $747.91. This calculation increases the lease

payment, as required in the lease agreement, "in an amount directly proportionate to the increase or decrease of . . . the Consumer Price Index."

Consistent with its first calculation, the court further found that "[i]n 1989 the adjustment will be computed as follows: $500.00 × (1988 all items C.P.I. ÷ 303.5)."

Hawaiian Village, Inc., pursuant to its interpretation of the lot lease agreement, and prior to its assignment of the lease to defendant George Victor Corporation, increased plaintiff's lease payment beginning July 1, 1979, to $730. This increase was based on the belief of Hawaiian Village that plaintiff's base year for purposes of lease payment increases began July 1, 1974 (with a December 1973 CPI base of 138.5), making the 5-year anniversary July 1, 1979. Approximately 5 years later, as what defendant believed was the second 5-year anniversary approached, defendant notified plaintiffs that their lease payments would be increased from $730 to $1,093, effective July 1, 1984. Plaintiffs tendered payment of $500 as lot rental to defendant. This tender was refused. Subsequently, plaintiff filed this action and deposited $500 with the court. Plaintiff later deposited an additional $500 for the lease year beginning July 1, 1985.

On appeal to this court, defendant assigns as error: (1) The trial court erred in finding there was no party plaintiff defect; (2) the court erred in refusing the admission of parol evidence to reform the lease; (3) the court erred in finding the first 5-year period commenced on the date of the lease between plaintiff and Hawaiian Village, Inc., rather than July 1, 1974; (4) the court erred in computation of the rental for the reason it is not in conformity with its findings; (5) the court erred in not reforming the lease to the agreement made by the parties prior to execution of the lease; and (6) the court erred in charging the excess payments made to Hawaiian Village, Inc., to the appellant herein.

From plaintiffs' point of view, this is a declaratory judgment action seeking the construction of a lease, and defendant has presented an action to reform a lease. The scope of our review in this case is de novo on the record. With regard to the construction of the lease where neither the executed lease nor

the facts and circumstances surrounding the lease are in dispute, construction of the lease contract is a question of law. *Boisen v. Petersen Flying Serv.*, 222 Neb. 239, 383 N.W.2d 29 (1986); *Lueder Constr. Co. v. Lincoln Electric Sys., post* p. 707, 424 N.W.2d 126 (1988). With regard to a question of law, this court has an obligation to reach its conclusion independent of the trial court's action. *Boisen v. Petersen Flying Serv., supra.*

Reformation of a contract is an equity action. *Parry v. State Farm Mut. Auto. Ins. Co.*, 191 Neb. 628, 216 N.W.2d 875 (1974). On review of an equity action, this court reaches its conclusion independent of the trial court, subject to the rule that we will consider, and may give weight to, the fact that the trial court observed the witnesses and accepted one factual version over another. *Buell, Winter, Mousel & Assoc. v. Olmsted & Perry*, 227 Neb. 770, 420 N.W.2d 280 (1988). In this case, the dispute in the evidence revolved primarily around defendant's efforts to reform the lease.

Defendant's first assignment of error alleges that there was a party plaintiff defect because Cherie Ames, Ronald Ames' wife at the time of filing the petition herein, was a joint tenant and was not made a party to the action for declaratory judgment. This contention is without merit. The record shows that after defendant's motion to dismiss plaintiff Ronald Ames' petition for the alleged party plaintiff defect, there was discussion among the trial court and counsel for both parties. After this discussion, the parties stipulated that Cherie Ames be made a party insofar as her spousal interest was concerned. This stipulation was accepted by the trial court. Cherie Ames was properly made a party to this action. We hold the trial court did not err in determining there was no defect in parties plaintiff.

Defendant's second assignment of error sets out that the trial court erred in refusing the admission of parol evidence to reform the lease. We first note that the trial court did admit parol evidence in the court's reformation of the lease agreement in the three respects set out above. Both parties agreed that this reformation was proper. The changes make the sentences read so they are intelligible.

With respect to the other reformation requested by

defendant, the defendant sought to change the second sentence of the fourth paragraph of the lease, as set out above, to read:

> IT is further agreed that after the expiration of a period of five years after July 1, 1974, and after each five year period thereafter during the term of this lease, the yearly lease payments set forth above shall be increased or decreased in an amount directly proportionate to the increase or decrease of the average Consumer Price Index
> . . . .

We have held:

> The right of reformation presupposes that the instrument does not express the true intent of the parties and the purpose of reformation is to make an erroneous instrument express the real agreement. If the parties have not come to a complete mutual understanding of all the essential terms of the bargain, there is no standard to which the writing can be conformed.

*Waite v. Salestrom*, 201 Neb. 224, 229, 266 N.W.2d 908, 912 (1978).

Reforming the contract in the manner suggested by defendant might well reflect what defendant wishes the lease stated, but the suggested language does not reflect the terms of the lease plaintiff signed. No mistake on the part of plaintiff was made. The lease, as reformed, clearly states that plaintiff is to pay an annual lot lease rent for 5 years and that after the "expiration of a period of five (5) years . . . the yearly lease payment set forth above shall be increased or decreased . . . ." The trial court properly held parol evidence was not admissible to permit a change in the agreed-upon lot lease agreement in the respects sought by defendant.

The third, fourth, and fifth assignments of error all involve the trial court's construction of the lease agreement and will be discussed together.

Both parties agree that the lease provides for a lease payment adjustment every 5 years. The parties disagree, however, as to when the adjustment is to be made. The crux of this appeal is the determination of the date on which the first 5-year period began. Defendant argues that the first 5-year period must be determined to begin July 1, 1974.

Plaintiffs argue, as held by the trial court, that the first 5-year period began July 1, 1978. A purchase agreement to lease the lot was signed by plaintiff on July 4, 1978. This lot lease was signed by plaintiff on July 28, 1978. The changes which the trial court made, as set out above, do not control this issue. Changing of the word "the" to "or" simply clarifies the point that the lease payment is to be adjusted every 5 years. Neither party disputes this.

After supplying the words necessary to reform the contract to reflect the changes the parties have agreed to, the court determined no further reformation was necessary and construed the lease agreement as written. We agree with the trial court and hold that the lease agreement expressly defines the initial date and CPI to be used when the lease provides that the calculation is to be made by "using the base for the first year of each five-year period." In the lot lease in question, we hold the first year of the first 5-year period runs from July 1, 1978, to June 30, 1979, and that the first year of the second 5-year period runs from July 1, 1983, to June 30, 1984.

Defendant's sixth assignment of error asserts that the trial court erred in charging the excess payments made by plaintiff to Hawaiian Village, Inc., to defendant. In support of this contention, defendant suggests the rule which states that an assignment of contract does not create a contractual obligation between assignee and the other party to the contract, citing *Industrial Loan & Inv. Co. v. Lowe*, 173 Neb. 624, 114 N.W.2d 393 (1962). Defendant further claims that the assignment of the lot lease by Hawaiian Village did not create a contractual obligation between itself and plaintiffs and that, therefore, if there was an overpayment of rent to Hawaiian Village, it cannot be offset against amounts due defendant.

This rule is applicable only where assignee has not assumed the liabilities of the assignor by the assignee. *Industrial Loan & Inv. Co. v. Lowe, supra.* Paragraph 2 of the "Assignment of Lease" from Hawaiian Village, Inc., to defendant George Victor Corporation provides in part: "[George Victor Corporation] agrees to assume all the obligations of [Hawaiian Village] in said subleases and shall be entitled to all rentals under said subleases due and payable on July 1, 1984 and

thereafter." In light of defendant's express assumption of Hawaiian Village's obligations, we hold, as did the trial court, that the funds overpaid by plaintiff to Hawaiian Village should be offset against the additional rent owed by plaintiffs to defendant.

We note an improper approach made in the trial court's journal entry in calculating the annual rental. In its entry, the trial court held: "On July 1, 1984 the computation for the amount of the annual base payment for the five years commencing July 1, 1984 is: $500.00 × (303.5 ÷ 202.9) = 747.91 annual lease payment [i.e., original lease payment times (December 1983 CPI divided by December 1978 CPI) equals new lease payment]." This is a correct method of calculation. However, the trial court next held: "In 1989 the adjustment will be computed as follows: $500.00 × (1988 all items C.P.I. ÷ 303.5)." This is incorrect. The trial court's formula uses the original 1978 lease payment ($500), but applies a multiplier which only takes into account the change in CPI from December 1983 to December 1988. These CPIs may be used, but only if the 1983 lease payment ($747.91) is used as the base payment. To yield a correct method of calculation, either one of two adjustments should be made: (1) use the 1983 lease payment ($747.91 times (December 1988 CPI divided by 303.5)), or (2) use the 1978 lease payment ($500), but also use the December 1978 CPI as the denominator ($500 times (December 1988 CPI divided by 202.9)). Although both of these reach the same mathematical result, the lease agreement defines and uses the first method, when it states "using the base for the first year of each five-year period."

In addition, we also note that incorrect dates were used to define the first 5-year period. In its journal entry, the trial court found that the lease commenced on July 1, 1978. This would make the 5-year anniversary July 1, 1983. Using the December 1977 CPI and the December 1982 CPI, the lease payment amount beginning July 1, 1983, is $500 times (292.4 divided by 186.1) equals $785.60. The second 5-year anniversary is July 1, 1988, thus the lease payment amount for that date is $785.60 times (December 1987 CPI divided by 292.4) equals July 1, 1988, lease payment.

In order to reconcile payments between the parties in light of the foregoing corrections, the amount paid by plaintiffs for each year must be compared to the amount owed by plaintiffs. On July 1, 1978, when plaintiff's lease began, the annual rental was $500. Plaintiff paid a correct adjusted rental of $463. On July 1, 1979, and on July 1 of the succeeding 3 years, plaintiff paid $730 when he owed $500. As of June 30, 1983, plaintiff had overpaid defendant $920. Beginning July 1, 1983, and for each year until July 1, 1988, the correct rent amount was $785.60. On July 1, 1983, plaintiffs paid $730 when they owed $785.60. For the payment due July 1, 1984, and again for the payment due July 1, 1985, plaintiffs paid $500 when they owed $785.60. This resulted in an underpayment by plaintiffs for the lease years 1983-84, 1984-85, and 1985-86 of $626.80. The net total of these differences in overpayments and underpayments is $293.20 overpaid by plaintiffs. To be current up through June 30, 1986, defendant should refund to plaintiffs the amount of $293.20. This result is based on the assumption that the two $500 payments deposited by plaintiffs with the court have been paid to defendant. On July 1, 1986, and on July 1, 1987, a lease payment of $785.60 is due. On July 1, 1988, a new lease payment amount should be calculated as set forth in the preceding paragraphs.

An additional point is raised by defendant. As set out above, Hawaiian Village, Inc., prematurely raised the lease payments from $500 to $730, beginning on July 1, 1979. Defendant contends that the making of four payments at the increased level shows that plaintiff construed the contract as defendant did. In *Bishop Buffets, Inc. v. Westroads, Inc.*, 202 Neb. 171, 175, 274 N.W.2d 530, 533 (1979), we held: "The practical construction put upon a lease contract cannot control the express, unambiguous provisions of the instrument itself." The lease language was not ambiguous with regard to the appropriate base-year issue. The trial court correctly determined that issue, and we so find. The judgment of the trial court is correct, as modified herein.

AFFIRMED AS MODIFIED.