LOREN E. GRONE, APPELLANT, V. LINCOLN MUTUAL LIFE INSURANCE COMPANY, APPELLEE.

430 N.W.2d 507

Filed October 14, 1988.    No. 86-1085.

Edward F. Carter, Jr., of Barney, Carter & Johnson, P.C., for appellant.

James M. Bausch, of Cline, Williams, Wright, Johnson & Oldfather, for appellee.

BOSLAUGH, WHITE, CAPORALE, and SHANAHAN, JJ., and COLWELL, D.J., Retired.

WHITE, J.

This action was brought as an action in equity in the district court for Lancaster County by the appellant, Loren E. Grone, seeking (1) an order determining whether Grone had any right to commissions on renewal premiums under the terms of a general agent's main contract between Grone and Lincoln Mutual Life Insurance Company (Mutual), (2) an accounting and a declaration of the commissions allegedly due under the contract, and (3) a determination of whether the Nebraska Wage Payment and Collection Act, Neb. Rev. Stat. §§ 48-1228 to 48-1232 (Reissue 1984), was applicable.

Trial in the district court was bifurcated, and evidence was received on the issues of whether Grone had a right to commissions and, if so, whether these commissions can be defined as "wages" within the Nebraska Wage Payment and Collection Act. Trial for an accounting of renewal premiums upon which commissions were claimed due was reserved to a later date.

The specific issues presented to the district court were (1) whether Grone performed all obligations required by the contract, thereby entitling him to commissions in renewal premiums; (2) whether the parties had a valid retroactive resignation agreement or whether the agreement to accept Grone's retroactive resignation was induced by fraud, making Mutual's subsequent termination for cause in 1983 effective; (3) whether Grone's claim for commissions was barred by the doctrine of unclean hands; and (4) if Grone was entitled to commissions, whether those commissions were covered by the provisions of the Nebraska Wage Payment and Collection Act.

In an order dated August 1, 1986, the district court dismissed Grone's petition, finding that Grone came into court with unclean hands, thereby barring any equitable relief.

The procedural posture of this case is somewhat confusing. Both parties refer to this as an action in equity, and the case was tried as an equitable action. However, it is not at all clear that this action should be in equity. In actuality, the case appears to be no more than a proceeding brought to recover commissions allegedly due under an employment contract. Nonetheless, because the parties tried the case in the district court as an action in equity, we follow the general rule that we will dispose of the case on appeal on the theory on which it was presented to the trial court. *Cimino v. W. A. Piel, Inc.*, 227 Neb. 196, 416 N.W.2d 505 (1987); *Lincoln Grain v. Coopers & Lybrand*, 216 Neb. 433, 345 N.W.2d 300 (1984).

In an appeal of an equity action, the Supreme Court tries factual questions de novo and reaches a conclusion independent of the findings of the trial court; provided, where credible evidence is in conflict, the Supreme Court considers and may give weight to the fact that the trial court heard and observed witnesses and accepted one version of the facts rather than another. *Southern Lumber & Coal v. M. P. Olson Real Est.*, 229 Neb. 249, 426 N.W.2d 504 (1988); *Kula v. Prososki*, 228 Neb. 692, 424 N.W.2d 117 (1988); *Ames v. George Victor Corp.*, 228 Neb. 675, 424 N.W.2d 106 (1988).

The facts in this case are fairly complex. On February 1, 1964, Grone and Mutual entered into a contract whereby Grone became a general agent of Mutual. Grone was apparently a very successful agent for Mutual and was satisfied with working exclusively for Mutual until sometime in 1983.

The Mutual employment contract expressly forbids, in paragraph 2, a general agent from selling insurance for another company. In practice, however, general agents for Mutual are authorized to act as agents for other companies because many insurance products exist that Mutual does not offer. However, this authorization does not extend to competing directly with Mutual for policyholders and deliberately rolling over Mutual's policies to another insurance company to the detriment of Mutual.

In the early 1980s some insurance companies began offering a product called universal life. Universal life policies permit the policyholders to pay in cash over the required premium so that the excess cash will earn interest. This excess is often obtained by "rolling over" the built-up cash values in any policy being canceled into the new universal life policy. Mutual did not sell universal life, nor did it intend to do so in the future. By 1983 Grone was becoming concerned that he was losing business to companies which sold universal life.

On June 2, 1983, Grone submitted an application to Lincoln National Life Insurance Company (National) seeking to become an agent for National. National sold universal life insurance. The application was approved, and in June of 1983 National took the steps necessary to have Grone licensed as its agent in Nebraska, effective July 1. At the time he applied for a position with National, Grone had decided to resign as a general agent for Mutual.

In June of 1983 National provided Grone with training, a computer, and other materials to assist him in selling National insurance policies. On June 28 Grone began utilizing the computer to prepare personalized printouts to present to Mutual's policyholders, intending to use these printouts to induce Mutual's policyholders to replace their Mutual policies with policies written by National.

On June 30 Grone prepared and signed a letter of resignation addressed to Mutual. The letter was delivered to National but not to Mutual at that time.

Starting July 5, 1983, Grone began making personal calls on Mutual's policyholders, and successfully induced them to cancel their Mutual policies and convert the cash values from them to policies written by National. To gain access to the cash values that had accumulated in the Mutual policies, Grone had the policyholders sign a letter addressed to Mutual requesting a loan on the existing Mutual policies. These loan request letters were not received by Mutual until after Grone's resignation had been submitted. Between July 5 and 7, Grone had sold over $1 million of life insurance to Mutual policyholders by getting them to agree to cancel their Mutual policies and switch to National.

On July 7, William Hawkins, vice president of agency for Mutual, telephoned Grone in order to determine Grone's need for Mutual calendars for 1984. Although Grone knew at that time he would not be working for Mutual in 1984 and had just sold over $1 million of National life insurance to Mutual policyholders, he merely told the vice president he was undecided as to the number of calendars he would need.

On or about July 16, Grone typed a postscript on his resignation letter to Mutual, and Mutual received the letter of resignation from Grone on July 18, 1983. After receipt of Grone's resignation, Mutual agreed to accept it in a letter dated July 19. When Mutual sent its letter accepting Grone's resignation, Grone's agency was deemed terminated as of July 1, 1983. At the time this resignation was accepted, Mutual knew nothing about Grone's activities on behalf of National. After Grone's resignation was accepted and the records of Mutual policyholders were requested, Grone retained copies of these records for his own use in convincing policyholders to replace Mutual policies with National universal life policies.

Grone's conduct in July regarding switching Mutual policies to National policies finally came to light in August of 1983. On September 7, Mutual sent Grone a letter rescinding the acceptance of the retroactive resignation and terminating him for cause effective September 7. Under the employment contract a termination for cause effectively bars any right to future renewal commissions.

The district court found Grone's claim barred by the doctrine of unclean hands. According to the doctrine, a person who comes into a court of equity to obtain relief cannot do so if he or she has acted inequitably, unfairly, or dishonestly as to the controversy in issue. 27 Am. Jur. 2d *Equity* § 136 (1966). See *Lewis v. Gallemore*, 175 Neb. 279, 121 N.W.2d 388 (1963).

The actual controversy in issue in this case is not the amount of commissions due Grone, or even the fact of whether, under the contract, Grone is entitled to these commissions. Instead, the controversy centers around the effectiveness of the acceptance of Grone's resignation retroactive to July 1, 1983. If the resignation is found to be effective, any conduct of Grone after July 1 cannot be examined to determine whether such

conduct was inequitable, as no duty was owed by Grone to Mutual after July 1. Therefore, Grone would be entitled to the renewal commissions due him as provided for in the contract. However, if instead the resignation is seen as ineffective, the termination for cause issued in the letter from Mutual dated September 7 will be effective, and Grone's right to any renewal commissions will likewise be terminated.

Although the doctrine of unclean hands could be said to apply and bar Grone's claim for renewal commissions in light of his conduct in obtaining the retroactive termination agreement, we believe other more appropriate grounds exist to bar Grone's claim. Where the record adequately demonstrates that the decision of a trial court is correct, although such correctness is based on a ground or reason different from that assigned by the trial court, the Supreme Court will affirm. *Sommerfeld v. City of Seward,* 221 Neb. 76, 375 N.W.2d 129 (1985).

We believe that the more appropriate ground for barring Grone's claim is that the contract for termination allowing Grone to resign retroactive to July 1, 1983, was induced by fraud. Because we find that the agreement to accept Grone's resignation effective July 1 was obtained by fraud, this agreement was ineffective, and the termination of Grone for cause on September 7 is operative, thereby precluding Grone from obtaining any renewal commissions under the general agent contract.

An agent and the principal are in a fiduciary relationship. *Walker Land & Cattle Co. v. Daub,* 223 Neb. 343, 389 N.W.2d 560 (1986). The existence of a fiduciary relationship places special burdens on the agent to refrain from acts harming the principal. Although appellant Grone is generally correct when he states he did not affirmatively lie to Mutual regarding his activities with Mutual, he did fail to disclose certain information. " 'Although the general rule is that "one party to a transaction has no duty to disclose material facts to the other," and [sic] exception to this rule is made when the parties are in a fiduciary relationship with each other.' " *State ex rel. NSBA v. Douglas,* 227 Neb. 1, 23, 416 N.W.2d 515, 529 (1987); *Midland Nat. Bank, etc. v. Perranoski,* 299 N.W.2d 404, 413 (Minn. 1980). When a relationship of confidence and trust

exists, the fiduciary has an obligation to disclose to the beneficiary of that trust all material facts, and failure to do so constitutes fraud. *Douglas, supra.*

In this case Grone failed to tell Mutual that he had been working as an agent for National since July 1, 1983, when he mailed his resignation to Mutual on July 16. More importantly, Grone failed to tell Mutual that he was inducing Mutual's clients to switch to National policies while he was still believed to be working as an agent for Mutual. In his testimony Hawkins stated that he would not have accepted a retroactive resignation on July 19, 1983, if he had known what he had found out by September 7: that Grone was purposefully inducing Mutual policyholders to switch to National before resigning as an agent for Mutual.

It is evident that Grone attempted to conceal facts from Mutual until he could be assured of receiving his June commissions from it. Additionally, Grone needed to be certain Mutual did not know of his conduct, otherwise he would have been terminated for cause and would lose all rights to renewal commissions, as finally happened on September 7 when Mutual discovered what Grone had been up to. The specific instances of concealment and conduct adverse to his fiduciary's interest include: (1) The use of Mutual's data and information on its policyholders in a concentrated effort to sell those Mutual policyholders on the idea of canceling their Mutual life insurance policies and buying life insurance policies issued by National; (2) after Grone had had the Mutual policyholders he contacted sign the letter addressed to Mutual requesting a loan on their then-existing Mutual policies, the letters were not received by Mutual until after Grone's resignation had been submitted, and Grone had held his letter of resignation until July 16, 1983, for the purpose of ensuring that he would receive his June 1983 commission check from Mutual before Mutual had notice of his resignation and the loan requests which had been signed by Mutual policyholders; (3) Grone did not actually submit his resignation to Mutual until July 16, 1983, and it was not accepted until July 19, and, therefore, prior to July 19 when he was selling National policies and converting Mutual policies over to National, he was acting as if he was no longer an agent

of Mutual, even though prior to July 19 Mutual was entitled to his loyalty; (4) Grone's conduct in converting Mutual policies to National prior to July 19 amounted to Grone's taking unfair advantage of Mutual to Mutual's financial detriment; and (5) after he had submitted his resignation and it had been accepted, Grone retained copies of Mutual policyholder records for his own use to the detriment of Mutual's business interests.

These facts are sufficient to support a finding that the retroactive resignation agreement was obtained by fraud. Grone's acts meet the standard set out in *Richardson v. Waterite Co.*, 169 Neb: 263, 99 N.W.2d 265 (1959), where it was held that silence constitutes a misrepresentation sufficient to support rescission of a contract where the "facts were within the knowledge of the person charged, that a duty to speak existed, that such information was material, and that the suppression of the information tended to induce action which the other party would not otherwise have taken." *Id.* at 269-70, 99 N.W.2d at 271. The retroactive termination agreement was therefore validly rescinded, and the September 7 termination of Grone for cause is operative, terminating any right to future renewal commissions under the general agent's contract.

The judgment of the district court is therefore affirmed.

AFFIRMED.

HASTINGS, C.J., and GRANT, J., not participating.